## NORRIS v. CLINKSCALES.

1. JURISDICTION—GREENWOOD COUNTY—ABBEVILLE COUNTY.—A suit brought in Abbeville County against one defendant resident there and another resident in Anderson County, is properly transferred to Greenwood County after its formation, the defendant living in that portion of Abbeville cut off to Greenwood.

2. GREENWOOD COUNTY.—The act establishing Greenwood County cannot be construed to mean that only those cases must be transferred from the old to the new county in which there are more than one defendant, and these living in territory cut off to new county.

3. TRESPASSER.—The defendants here are not joint trespassers, but this is a several action against each. *Norris* v. *Clinkscales, 47* S. C., 488, affirmed.

4. PRACTICE—APPEAL.—Where testimony is brought out contrary to ruling, the remedy is not appeal, but motion to strike out.

5. OBJECTION—APPEAL—PRACTICE.—An objection to testimony stating no ground requires no ruling, and will not be considered on appeal. Proper practice is to state ground of objection clearly, and upon failure then to rule, this Court on appeal will consider objection as overruled.

6. AN EXCEPTION containing a quotation from a charge may not be too general, but to receive consideration it must state clearly and distinctly the error complained of.

7. MARRIED WOMAN—EXCEPTION.—CHARGE as to right of married woman to hold and own property separate from her husband, held applicable to this case, and form of exception thereto commended.

Before GAGE, J., Greenwood, April, 1900.    Affirmed.

Action in claim and delivery by E. B. Norris, executor of Jane Estelle Clinkscales, against A. J. Clinkscales and T. L. Clinkscales, jr.  From judgment for defendants, plaintiff appeals on the following exceptions, respectfully submitting that his Honor erred in the following particulars:

"I. In holding and ruling that the Court of Common Pleas for Abbeville County has not jurisdiction of the defendants, and that said county of Abbeville is not the proper place for the trial of this action.

"II. In ruling and holding that the Court of Common Pleas for Greenwood County has jurisdiction of the defendants and of this action, and that the said county of Greenwood is the proper place for the trial of this action.

"III. In not ruling and holding that inasmuch as the Court of Common Pleas for Abbeville County had acquired jurisdiction of the defendants and of this action, such jurisdiction continued and could not be divested without the

clearest and most unequivocal intention of the legislature to divest it.

"IV. In not ruling and holding that the Court of Common Pleas for Abbeville County having acquired jurisdiction of both the defendants and of this action by reason of the fact that one of the defendants resided in said county at the time of the commencement of this action, and the election of the plaintiff to sue in said county, such jurisdiction continued in said Court, and was not and could not be divested by the act creating Greenwood County, inasmuch as that act does not by its terms or by necessary implication confer upon the Court of Common Pleas for Greenwood County jurisdiction of the defendant, T. L. Clinkscales, jr., and hence it has not jurisdiction of either of the defendants, this being an action against the two defendants jointly.

"V. In not ruling and holding that by the plain terms of the Code of Procedure and the act creating Greenwood County, the Court of Common Pleas for Abbeville County has jurisdiction of this action, and the Court of Common Pleas for Greenwood County has not jurisdiction of it, because the said act confers jurisdiction upon the Court of Common Pleas for Greenwood County only in cases where all the defendants reside in Greenwood County.

"VI. In allowing the defendant, T. L. Clinkscales, to testify, notwithstanding the objection of the plaintiff, that he did not have and had never had in his possession any of the property mentioned and described in the complaint.

· "VII. In allowing said T. L. Clinkscales to testify, notwithstanding the objection of the plaintiff, that he did not have the horse, Dixie, in his possession at the time of the commencement of this action.

"VIII. In making the following ruling: 'He can prove what property he was in possession of. As I understand the judgment of the Supreme Court is to the effect that these parties were not joint trespassers, that the pleadings and the evidence showed them not to be joint trespassers.'

"IX. In allowing the said T. L. Clinkscales to testify that

he had none of the property in his possession after making the following ruling: 'Having admitted that he was in possession of some of the property, he will not be heard to say that he was in possession of none, because plaintiff has not been advertised. He cannot be heard to deny that he had some of this property.'

"X. In allowing the witness, T. L. Clinkscales, to testify, notwithstanding the objection of the plaintiff, that his assignment of the mortgage of J. P. Clinkscales to himself was made to Jane Estelle Clinkscales without any consideration, and that there was not anything due on it at the time of such assignment, it being respectfully submitted that he was estopped by making said assignment from making any such statement, inasmuch as he is one of the defendants in the action, and appears in it as a mere volunteer.

"XI. In not ruling and holding that the Supreme Court has already decided in this case that said defendant is estopped from giving such testimony.

"XII. In charging the jury at the request of the defendants as follows: 'I. That before the jury can find a verdict against T. L. Clinkscales for any of the property sued for in this action, they must find that he was in possession of the property at the time of the commencement of the action, and it will not be sufficient to support a recovery that he came into possession of any such property after this suit was commenced.'

"XIII. In charging the jury as follows at the request of the defendants: 'II. That under the law of this State in 1892, a married woman was entitled to hold property separate from her husband, and her possession would not be the possession of her husband, the said charge having no relevancy whatsoever to the facts of this case.'

"XIV. In charging the jury, at the request of the defendants, as follows: 'III. That if the T. L. Clinkscales mortgage had been paid in full before the assignment of it to Jane Estelle Clinkscales, then she would take no interest in the property under such assignment, there being nothing to

assign; and that the same doctrine will apply to the other mortgage in this case.'

"XV. In charging the jury as follows: 'Now the fourth request is about the same as in the other three. I charge you that if the Fleetwood Clinkscales debt was paid, that kills the mortgage, and there was nothing to assign.'

"XVI. In charging the jury as follows: 'Now, when this case was in Court before, it decided that it was a suit of Estelle Clinkscales against T. L. Clinkscales and another suit of Estelle Clinkscales against A. J. Clinkscales, but in effect two suits. So that you are to sit here and try the case as if you were trying two suits with the same plaintiff in each case.'

"XVII. In charging the jury as follows: 'Just like I owned a mortgage on John Smith's horse, and I assigned that mortgage to you, you take whatever interest I had in that mortgage; and not only that, but if there are any defects in that mortgage, any burdens upon it, if there was anything to ruin it in the hands of John Smith, why the same thing would ruin it in my hands if I hold it. If I could recover on it against John Smith, it is a good mortgage, and you could recover on it, if you held it.'

"XVIII. In charging the jury as follows: 'Therefore, the question for you to decide is, what was due on that mortgage. Now, the mortgage is made to secure the debt. Knock down the debt, and the mortgage falls too. One is a party to the other, joined to, and the death of one means the death of the two. There are some exceptions to that rule, but that need not bother you. Now, there are some difficulties in this case. If the mortgage was dead in the hands of the defendant, and if the debt had been paid which it was made to secure, that kills it, and when Estelle Clinkscales took it, she took it dead, too. That is true beyond doubt, if it was dead in the hands of the defendants.'

"XIX. In charging the jury as follows: 'If I assign to you a mortgage, and you pay me for it your money, I will not be heard to say that the mortgage was no account if you

sued me on that mortgage. If I say I assign you a mortgage on a horse, and I want to get the horse, and come to find out that there is no horse, and I paid you money for it, and went back on you, and I said I paid you money on it, on that mortgage, and you had assigned the mortgage to me, it would not lie in your mouth to say that you had no title to it; but if that horse is in the possession of another person, and the person who holds the mortgage is demanding the horse, the other person not mixed up can show that it was not a mortgage, but that it is dead.'

"XX. In charging the jury as follows: 'Now, I have reduced my views on this question to writing, and I have to use letters because I cannot refer to the testimony. If T assigns a mortgage to E, and E pays value to T therefor; thereafter in a suit by E against T for the assignment, T can't say he had no title; but in a suit against A by E for the recovery of property included in the mortgage and in the possession of A, it can be shown, and shown by the oath of T, that the mortgage was paid when assigned.'

"XXI. In allowing the defendants to offer testimony that the mortgages were paid off with the money of J. P. Clinkscales, that they were satisfied before the assignment to Jane Estelle Clinkscales, and that no consideration passed from her for the assignment; and in charging the jury that if the testimony showed that the assignments were without consideration paid by said Jane Estelle Clinkscales, the mortgages were dead at the time of the assignment, and the said Jane Estelle Clinkscales took nothing thereby, it being respectfully submitted that the defendants are estopped from claiming that there was no consideration for the assignment, and that inasmuch as they are mere volunteers, they had no right to question the transaction in any way, or to take the property from the possession of the plaintiff, who was lawfully in possession of same, and entitled to retain possession of the same by the consent of her husband, if for no other reason."

*Messrs. Graydon & Graydon,* for appellant, cite: *As to whether Greenwood Court had jurisdiction:* Code, 146; 22 Stat., 610. *Assignor cannot testify that assignment was without value:* 58 Am. Dec., 645; 4 Rich. L., 422; 9 Rich., 450; 47 S. C., 488.

*Mr. Frank B. Gary,* contra, cites: *As to jurisdiction of Greenwood County:* Code, 146; 22 Stat., 610; 53 S. C., 199. *Objection to testimony after answer is remedied by motion to strike out and not appeal:* 56 S. C., 136. *Exceptions 14 to 20 too general:* 52 S. C., 83.

*Mr. Geo. E. Prince,* also contra, cites: *Testimony coming in without objection can only be stricken out on motion:* 28 S. C., 261. *Exceptions 8, 12 to 20 are too general:* 42 S. C., 471; 40 S. C., 537. *Testimony of T. L. C. does not impeach assignment, but goes only to consideration, which is proper:* Featherstone *v.* Dagnal; Watson *v.* Neal.

*Messrs. Parker & Greene,* also contra, cite: *As to the jurisdiction of Greenwood Court:* Code, 144, sub. 4; 25 S. C., 385; 28 S. C., 313; Code, 146; 53 S. C., 199; Code, 147; 11 S. C., 122; 22 S. C., 276; 26 S. C., 70; 22 Stat., 610. *Proper practice where objectionable testimony comes out without objection:* 53 S. C., 80. *Ground of objection not stated, not considered:* 23 S. C., 75; 44 S. C., 16. *Party bringing out on cross-examination testimony objected to by him in chief, cannot on appeal except to testimony in chief:* 53 S. C., 246; 48 S. C., 337. *Estoppel by conduct defined in:* 13 S. C., 36.

February 12, 1900. The opinion of the Court was delivered by

JUDGE BENET, acting Associate Justice in place of Justice Gary, disqualified. This action for claim and delivery has already been before this Court, see 47 S. C., 488, where the facts are sufficiently set forth. A new trial having been

granted, the case was heard at the October term at Abbeville, 1897, the result being a mistrial. At the next October term, 1898, the case came on for its third trial, at Abbeville. After the plaintiff had rested his case on his testimony in chief, one of the defendants, A. J. C., testified that he was then living not in Abbeville County, but in the new county of Greenwood. It appeared from this testimony that when the suit was first brought, he was living in that part of Abbeville County which had been cut off from that county and included in the new county of Greenwood. Upon this testimony a plea to the jurisdiction was made by the defendants. His Honor, J. C. Klugh, the trial Judge, sustained the plea, and held that the Court of Common Pleas for Greenwood County was now the proper forum. It seems, however, that no formal order was passed. But the brief makes it clear that, because of Judge Klugh's decision, the cause came up for trial in the Court of Common Pleas for Greenwood County at the April extra term, 1899. It seems, also, that no appeal was taken from the decision of Judge Klugh.

When the trial began before his Honor, Judge Gage, at Greenwood, both sides objected to the jurisdiction of that Court. Counsel for the defendant, T. L. C., contended that the Court for Greenwood County had no jurisdiction as to him, seeing that he was a resident of Anderson County, and that the property alleged to be in his possession was in that county. This objection was properly overruled; and no appeal was taken from Judge Gage's ruling. Then counsel for plaintiff stated—we quote from the brief—"that in their judgment Abbeville and not Greenwood was the proper jurisdiction. The presiding Judge stated that if all parties were agreed that Greenwood was not the right jurisdiction, he would not hear the same. But all parties were not so agreed, and the presiding Judge ordered the cause for trial, being of opinion that Greenwood was the proper jurisdiction." The case was, therefore, tried there; and the jury found a verdict for the defendants.

Thereupon the plaintiff appealed to this Court from the ruling and the charge of the Circuit Judge, and from the verdict and judgment.

The plaintiff submits twenty-one grounds of appeal; but it is not necessary to consider them one by one, as they fall readily into groups; and, besides, several of them were not seriously urged by counsel. The first five relate to the question of jurisdiction. On this subject the appellant contends: *First.* That the Court of Common Pleas for Abbeville County acquired jurisdiction of the defendant, T. L. C., a citizen of Anderson County, by service of process upon him. *Secondly.* That the act creating Greenwood County has neither expressly nor impliedly deprived the Court for Abbeville County of its jurisdiction over T. L. C., because he is not a resident of Greenwood County. *Thirdly.* That as the Court for Abbeville County has jurisdiction of T. L. C., and as this action against co-defendants living in two different counties must be tried in one of those counties, the Court for Abbeville County retains its jurisdiction over the defendant, A. J. C., also, although he is now a citizen of Greenwood County. While the question of jurisdiction in this case might well be regarded as settled by Judge Klugh's decision, from which, as we have seen, there was no appeal, we shall still consider it as if it were *res integra.* And that consideration will show that both Judge Klugh and Judge Gage ruled correctly in maintaining the jurisdiction of the Court for Greenwood County. The opinion of this Court, by Mr. Chief Justice McIver, in *Riddle* v. *Reese,* 53 S. C., 200, throws all the light that is needed upon this issue of jurisdiction. The legislation necessary for the creation of the new county of Cherokee was almost identical with that enacted for the creation of Greenwood County. The provisions in both acts for transferring pending suits from the old counties to the new are the same. Both acts contain the following words, 22 Stat., 610: "All suits pending in the Courts of" (naming the old counties) "of which the defendants reside in those portions

of the said counties now established as the county of"
(naming the new county) \* \* \* "shall be transferred to
the dockets of the Courts of the said county of" (naming the
new county). The case at bar was one of the suits pending
in the Court of Abbeville County when the Greenwood
County act was passed; and A. J. C., one of the defendants,
resided in a portion of Abbeville County which was "estab-
lished" as part of Greenwood County. These facts would
seem to be sufficient to justify the conclusion that this suit
was properly transferred from Abbeville to Greenwood.

But it is urged for the appellant that because T. L.
C., a defendant, resides in Anderson County, and the
act of 1897, to establish Greenwood County, pro-
vided in section 12 for the transference of pending suits "of
which the defendants"—not "defendant" but the plural
"defendants"—resided in those portions of the old counties
which were established as the new county; that, therefore,
the terms of that act do not apply to this suit, because only
one defendant resided in one of the old counties when the
act was passed. We cannot so hold. The use of the plural,
"pending suits," for the transference of which this act was
providing, made it necessary to use the plural "defendants."
The narrow construction contended for by counsel for the
appellant would violate the plainest rules for the interpreta-
tion of statutes. Manifestly it was not the intention of the
legislature to provide for the transference of only those
pending suits with more than one defendant, of which all the
defendants had been made residents of the new county.
Our opinion is, and we so hold, that just as the Court for
Abbeville acquired jurisdiction of this cause at the com-
mencement of the suit because A. J. C., one of the defend-
ants, lived in Abbeville County, so, also, the Court for
Greenwood County acquired jurisdiction of this cause when
the same defendant, A. J. C., was made by operation of law
a resident of Greenwood County. The domicile of A. J. C.
determined the question of jurisdiction when the suit was
begun. The domicile of A. J. C. caused the transference of
16—59

the pending suit and again determined the question of juris-
diction.    The views here expressed are not in conflict with
sections 144, 145 and 146, of the Code of Civil Procedure.
The plaintiff's first five exceptions are, therefore, overruled.

The next question to be considered is: Did the Circuit
Judge err in holding that this was a several action against
each of the defendants; and not a joint action against them
both?    In ruling on this question, the Judge said:
"As I understand, the judgment of the Supreme
Court is to the effect that these parties were not joint
trespassers—that the pleadings and the evidence showed
them not to be joint trespassers."    To this ruling the appel-
lant's eighth exception is directed.    This ruling of Judge
Gage was clearly in accord with the expressed opinions of
this Court in its former decision in this case.    See 47 S.
C., 503.    Appellant's counsel conceded this, but he hoped
the Court would allow him to review that decision.    *Ex
gratia,* this was done; but we see no reason to disturb the
conclusion announced in that decision.    The eighth excep-
tion is, therefore, overruled.

Counsel rested the appellant's case mainly upon the ex-
ceptions we have already overruled, and did not seem to rely
with much confidence upon the remaining grounds of appeal.
Still, since they were neither withdrawn nor abandoned, we
shall briefly consider and dispose of them.

Exceptions sixth and seventh charge error in the Judge
for "allowing the defendant, T. L. C., to testify notwith-
standing the objection of the plaintiff, that he did not have
and never had in his possession any of the property
mentioned and described in the complaint;" and
"that he did not have the horse, Dixie, in his posses-
sion at the time of the commencement of this action."
With regard to this witness, the Judge ruled, that "having
admitted that he was in possession of some of the property,
he will not be heard to say that he was in possession of none.
He cannot be heard to deny that he had some of the prop-
erty."    This shows that the exceptions under discussion

were framed under a misunderstanding of the facts. The
ruling of the Judge was just what the plaintiff desired. If
afterwards the witness testified as alleged, and not in ac-
cordance with that ruling, the remedy was, not to appeal,
but to move the presiding Judge to strike from the record
such incompetent testimony. The sixth and seventh excep-
tions are overruled; and with them the ninth exception,
which charges error "in allowing the said T. L. C. to testify
that he had none of the property in his possession, after
making the following ruling"—referring to the ruling
already quoted.

The remaining twelve exceptions are all overruled, not
only because they fail to show error in the Judge's rulings
or his charge, but, also, because they are objectionable on
other grounds. All the exceptions will be set forth in the
report of this case, and these twelve need not be quoted now.

The tenth charges error for allowing the witness, T. L. C.,
to give certain testimony, "notwithstanding the objection of
plaintiff." With regard to this testimony, the brief does
not show the grounds of objection. All that we find
there is this: "Mr. Graydon objects. No ruling."
We need only repeat the language of this Court, in
*Allen* v. *Cooley,* 53 S. C., 80: "The ground of objection was
not stated; and a ground of objection which was not ruled
upon by the presiding Judge cannot be urged in this Court."
And on page 81: "The proper practice * * * is to offer the
testimony, and to have the presiding Judge to rule upon its
competency, if specific objections are urged against its intro-
duction." See, also, *Brown* v. *Foster,* 41 S. C., 120. This
Court has frequently taken occasion to indicate what is the
proper practice. Objections to testimony should be plainly
and specifically stated. It is not sufficient for counsel to
say, "I object." The reason for the objection should be
clearly expressed. When this is done, the presiding Judge
has something definite to pass upon, he will make his ruling
either sustaining or overruling the objection. When this is
not done, the Judge need make no ruling. But when the

specific ground of objection is stated—as that the testimony is irrelevant, or that the question is a leading question, or the like—and the Judge makes no ruling, this Court may well conclude that, seeing he did not sustain the objection, he tacitly overruled it; and an exception based on such a state of facts would be considered on appeal. A Judge's omission or failure to consider or rule upon a question properly raised, or an objection plainly stated, should not work prejudice to the party who has properly done his part in making the objection or raising the question. This just principle was applied in the case of *Aultman* v. *Utsey,* 41 S. C., 311. The issue of homestead had been made by the pleadings, but the Judge had not considered nor decided it; held "error for the Circuit Judge to omit to consider and decide that question." Similarly in *State* v. *McIntosh,* 39 S. C., 108, when it was shown that the presiding Judge had failed to consider or pass upon a specific request to charge, this Court held as follows: "The proposition of law here asked to be charged was sound law, and, no doubt, the presiding Judge so believed. If so, he should have so charged the jury; and his failure to do so was fatal error." In this case, so far as is disclosed by the brief, the grounds of objection were not stated, and the Judge made no ruling. There is nothing in the tenth exception, therefore, which may properly be considered here, and it must be overruled.

The eleventh exception, being based upon the tenth, is also overruled. The twenty-first is subject to the same objection, and is similarly disposed of.

Exceptions 12, 14, 15, 16, 17, 18, 19 and 20, present each a *verbatim* extract from the charge of the Judge. Counsel for the respondents argue that these exceptions are "too general" to be considered. In support of this view they cite *Davis* v. *Elmore,* 40 S. C., 537, where the following language was used: "The fifth exception is nothing but a quotation from the charge of the Judge, without pointing out any error in the language quoted, and, therefore, presents no question for us to consider." And

also the following: "The seventh exception is a mere quotation from the charge of the Judge, and must share the fate of the fifth exception, for the same reason as is there given." These extracts from the opinion in *Davis* v. *Elmore* do not justify the view that an exception is fatally defective, if it consists of a quotation from the Judge's charge merely. Nor was it the intention of this Court to convey such an idea. An exception may be nothing but a quotation from the Judge's charge, and yet be not objectionable *per se.* It is certainly objectionable, even though a mere quotation from the charge, if it contains several propositions. When it thus fails to indicate where the error complained of lies, "the Court is left to conjecture whether the intention is to impute error in all of these propositions, or only one of them; and, if so, which one"—to use the language of Mr. Chief Justice McIver, in *Baker* v. *Hornick,* 57 S. C., 224. Such an exception is justly regarded too general and indefinite. But if an exception, although it may consist of a mere quotation from the Judge's charge, plainly sets forth only one distinct proposition, and charges that it is error of law, it is not necessarily too general. It may from its very nature be quite specific and definite. For example, should a Circuit Judge inadvertently charge the jury in a criminal case that the defendant is required to prove his affirmative defense beyond a reasonable doubt, an exception embodying nothing but the Judge's language to that effect would be sufficiently definite and certain to be considered by this Court. Yet even in such a case, the better practice undoubtedly is to state clearly the error complained of, in addition to the quotation from the charge. The vice in the class of exceptions properly condemned as too general consists in their failing, because of indefiniteness, to make clear to the Court what is complained of as error. As was well said in *Walker* v. *Walker,* 17 S. C., 339, by Judge Fraser, acting Associate Justice, such exceptions "do not bring the mind of the Court to any point on which its judgment is sought." It is the duty of the appellant to make plain to an appeal

Court what his grounds of appeal are; the Court should not be left to conjecture as to those grounds. The Court does its whole duty when it passes upon exceptions which distinctly set forth alleged errors of law; it is not its province to look for such errors, but only to consider them when pointed out. When we apply the foregoing test to exceptions 12, 14, 15, 16, 17, 18, 19 and 20, we find that they are too general and indefinite, not simply because they are mere quotations from the charge of Judge Gage, but because they fail to show with clearness and distinctness what the appellant complains of as error. They are, therefore, overruled.

Exception thirteenth is free from this fault. It reads as follows: "That the presiding Judge erred in charging, that under the law of this State in 1892, a married woman was entitled to hold property separate from her husband, and her possession would not be the possession of her husband—the said charge having no relevancy whatsoever to the facts of this case." This exception is not chargeable with the vice of being too general and indefinite. As an exception it is well framed. It embodies a quotation from the Judge's charge, which is a distinct proposition, and in addition it plainly indicates what is claimed to be error of law in submitting that proposition to the jury. But we do not think the exception is well taken, and it is overruled.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.