Case 45—PETITION ORDINARY—November 15.

# Lou. & Nash. R. R. Co. v. Finley.

### APPEAL FROM WHITLEY CIRCUIT COURT.

1. RAILROADS—RIGHT TO CHANGE PUBLIC ROAD.—A railroad company has no right in constructing its road to change the location or grade of a public way so as to deprive the adjoining owner of his right to enjoy his premises by preventing ingress or egress, and if it does so, must answer in damages therefor.

2. BILLS OF EXCEPTIONS.—Depositions used as evidence upon the trial of an ordinary action can not be considered upon an appeal, unless embraced in the bill of exceptions or identified by an order of court. A statement by the clerk interpolated in the bill, attempting to identify the depositions read on the trial, will not suffice.

3. SAME.—An express statement in a bill of exceptions that it contains all the instructions, is not required. If it shows that certain instructions were asked by the plaintiff, and either given or refused, and there is a like showing as to the defendant, then, in the absence of any thing in the record showing that others were given or refused, the bill will be regarded as complete in this respect.

4. REVERSIBLE ERRORS.—In the absence of a part of the testimony, the Court cannot consider any questions relating to the testimony offered or introduced upon the trial.

WILLIAM LINDSAY, HILL & ALCORN FOR APPELLANT.

The injury complained of being common to all, and the damages being consequential and not direct, no action will lie. (Barr v. Stephens, 1 Bush, 293 ; Cosby v. O. & N. R. R. Co., 10 Bush, 292; Mills on Eminent Domain, sec. 18? ; 25 Vermont, 59; Kenneth's Petition, 24 N. H., 139; E. & P. R. R. Co. v. Helm, 8 Bush, 682.)

HARGIS & EASTIN AND A. DUVALL FOR APPELLEE.

For actual and direct damages caused by the opening or alteration of public ways an adjacent property owner is entitled to recover. (Keasy v.

City of Louisville, 4 Dana, 154; L. & N. R. R. Co. v. Hodge, 6 Bush;
E., L. & B. S. R. R. Co. v. Coombs, 10 Bush, 388; Railroad Co. v.
Esterly, 13 Bush.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This action is in the nature of *case* to recover dam-
ages from the Louisville and Nashville Railroad Com-
pany by reason of the construction of its road over and
near the property of the appellee, H. F. Finley. It
consists of three tracts, lying near each other, but
not adjoining. Over two of them he sold the right of
way to the company. The road as built runs through
one of these, dividing it; and as to it the claim for
damage is for the *non*-building of crossings, as required
by the appellee's charter, to enable the owner to pass
from one portion to the other, where it has been thus
divided. It does not clearly appear from the plat on
file whether the other one of these two tracts is cut in
two by the road, or whether it merely cuts off from one
corner of it so much land as is taken for the right of
way; but in any event the court, by its instruction,
restricted the right of recovery as to it to any earth
taken therefrom, if any, by the company, and not em-
braced by the grant to it.

The main controversy is as to the third lot of land.
The damage awarded by the jury, save a comparatively
small amount, relates to it. It is situated in the
suburbs of the town of Williamsburg, and at the junc-
tion of the Jacksboro and Pine Knot roads, and con-
sists of two acres of land. Upon it the appellee had,
prior to the construction of the railroad, erected a val-
uable dwelling-house, with necessary outbuildings, such
as a stable, etc., and was occupying it with his fam-

ily as his home. The Jacksboro road bounds the lot on the east side, and upon it the house fronts; while, up to the time of the building of the railroad, the Pine Knot road ran along the south side. It does not appear whether at that time these roads at that point were a part of the streets of the town or not.

It is admitted that the lot was within the town, and that the Jacksboro road was its principal street. We shall assume, however, as do the appellant's counsel, that they were at that point ordinary public roads.

Prior to the building of the railroad the grade of the lot was higher than either of the roads abutting it. The railroad was constructed upon the Pine Knot road side of the lot, about forty yards from it, and upon land acquired from others. At that point it was built upon a considerable fill, and, therefore, crossed the Jacksboro road at a high grade. This necessitated the raising of the grade of the latter road, so that the public in traveling it could cross the railroad. The fill thus made extended from the railroad crossing for over a hundred feet in front of the appellee's lot. At the railroad it was about fourteen feet high; and thence gradually declined.

By thus raising the grade the Jacksboro road was lessened in width for travel from forty to fourteen feet, and no wall was erected along this embankment, next to the appellee's lot, to protect it. The company, without having any authority from the county, removed the Pine Knot road from its old location along appellee's lot to the south side of its road, thus bringing its road, and the high embankment upon which it was built, between appellee's property and the Pine Knot

road. In this way egress and ingress to his stable lot, and from a good portion of his property, was cut off as to both roads. He complains of this; also, that it caused his lot to overflow with water; the mud and dirt to spread back over it; a frog pond to form on the lot opposite and near to his house, engendering malaria; and of other actual injuries, which we need not mention.

The record shows that certain depositions were used as evidence upon the trial which are not embraced by the bill of exceptions. The clerk in copying the record has interpolated in the bill a statement signed by him for the purpose of identifying them. This cannot be done. It cannot be left to him to determine what testimony was offered upon the trial. The depositions are not identified by either the bill or any order of court. We can not, therefore, consider any questions relating to the testimony offered or introduced upon the trial, as all of it is not before us in legal form.

It is also questionable whether we can consider the instructions. The bill of exceptions shows that the plaintiff asked certain instructions, which were given, that the defendant offered two, one of which was modified and then given, and the other refused. If nothing further appeared, it should undoubtedly be presumed that these were all that were given or refused, since an express statement in a bill that it contains all the evidence or all the instructions is not required. If it shows that certain instructions were asked by the plaintiff and either given or refused, and there is a like showing as to the defendant, then, in the absence of any thing in the record showing that others were given'

or refused, the bill will be regarded as complete in this respect. So if it shows that each side offered certain testimony, the presumption should be indulged that the bill contains all that was offered. In this instance it has, in addition to what we have already stated, a statement in parenthesis by the clerk that it contains in one place the words, "instructions hereto attached," and that he is unable to tell what instructions are thus referred to; but that the bill contains all that were asked by either side. We conclude, however, but not without hesitation, that by fair construction it shows with reasonable certainty all the instructions that were given or refused; and we will, therefore, in passing upon them under the pleadings, consider the law of the case.

It is said that the charter of the appellant authorized it to cross the public road, provided the public travel was not thereby impeded; that the public duty was therefore imposed upon it of so elevating the grade as not to do so; and it is urged that this was a legislative delegation to the company of the public right to change the grade of the public road, and make it conform to that at the railroad crossing; that this delegation of public authority also gave to the company the right to alter the location of the Pine Knot road; and that having done so in the exercise of this delegated public right, and by way of discharging a public duty imposed upon it, the company stands in law in the place of the public, had it done so.

Undoubtedly, the proper authority can change the location of a road or its grade; but even it, in doing so, must not invade private property. It may discontinue a public road altogether, and no one can complain of mere remote or consequential injury.

There was, however, no duty resting upon the company requiring them to build their railroad or to cross the Jacksboro public road. It did all this of its own accord. It was its duty to preserve the rights of the public in the free use of the public road; but this duty was imposed by its own conduct, and was the result of its own free will in building its road.

The public did not produce the necessity for the change of location of one road and a fill in the other. It can not be properly said that it resulted from the exercise of a public duty; and if so, private right can not be invaded and sacrificed even for the public good. It was rather a result arising from the need or convenience of the company, and brought about for its profit.

It is urged with commendable earnestness, however, that the appellee had no right of property in the public roads; that no individual can have; that they are unlike a street in a city, which is dedicated to the adjoining property-owners as well as the public; and that, as they can be discontinued at will by the proper authority, therefore the abutting property-holder can have no right of action if his mere enjoyment of them be disturbed without *special* injury by an encroachment upon his property.

Grant that an ordinary public way may, by the proper authority, be discontinued or applied to some other public use than that for which it was originally established without any legal liability to the local public or the abutting owner, for the reason that there is no right of property in it that is not common to every one; grant also, that the same authority may

alter its grade so as to interfere with its enjoyment by the adjoining owner without there being any liability, unless there is an actual encroachment upon his property; yet no one will question but what the Commonwealth, with all her power of eminent domain, can not, even for the most important public use, invade private right and encroach upon private property without the owner's consent, or paying him a just equivalent. In this case it abundantly appears there was such an invasion and encroachment.

But even the case we have just supposed is not this one. Here the public did not change the one road and alter the grade of the other. True, legislative authority had been given to the appellant to build a railroad; but individual right requires that such a grant should be so construed as to only authorize the work to be done without interfering with private right. The appellee had the right of ingress and egress to and from his premises; the appellant had no right to prevent this; but it has so constructed its work that he is in a great measure deprived of the use of his property. So long as these public roads existed he had the right, certainly as against the appellant, to use them in connection with his property; and the deprivation of such use is an encroachment upon the use of his property, and his right to its uninterrupted enjoyment, resulting in direct injury.

When the extraordinary privilege is given to certain persons who have formed themselves into a corporation to construct a public work like a railroad, it must be done without interfering with any right

then belonging to or being exercised by any individual. The legislative grant must be so construed; and if not so done, and a direct injury results therefrom to the property of the citizen, the corporation must answer in damages. Private right must be regarded. The privilege is not an unlimited and arbitrary one; and it must be exercised with due regard and without invading any personal right of enjoyment. No license is given by the grant to encroach upon private right or to deprive the owner of it, either directly or indirectly. The authority is given subject to the preservation of it, and with the burden of responding in damages for its invasion and direct injury. Individual security and natural justice require this rule. We do not mean to determine that the abutting owner may recover for remote or consequential damages, resulting from a change in or the use of the road for the public good. If the work is being done by a corporation by legislative grant, and it keeps entirely within the public way, doing no injury except remotely, then there is no redress; but if it deprives the adjoining owner of his right to enjoy his premises by preventing ingress or egress, or floods them with water, or covers them with dirt, or renders them unhealthy by the creation of stagnant pools of water, then the injury is *direct* and actionable. (L. & N. Railroad Co. v. Hodge, &c., 6 Bush, 141.)

The instructions conformed to this view of the law. They submitted to the jury no element of damage of a doubtful legal character.

As to the other two lots, they limited the right of

the recovery in the one case to any failure to build a sufficient crossing from one part of it to the other, and in the other to any earth that had been taken from it without the leave of the appellee.

Judgment affirmed.