APPEL, Appellant, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

(148 N. W. 513.)

**1.  Eminent Domain—Remedy of Owner—Single Cause of Action—Damages.**

Where a railroad was constructed in a public street in

front of plaintiff's property, plaintiff not owning the fee in the street, **held**, that her damage because of interference with the use and enjoyment of her dwelling house and the lots connected therewith was consequential, and also original and permanent, giving rise to but a single cause of action; and the measure of damages was the difference between the value of the property immediately before and immediately after construction of the railroad.

**2.   Eminent Domain—Damages—Owner's Remedy—Railroad's Tortious Predecessor—Action—Parties Defendant.**

Where a railroad constructed its line in the street in front of plaintiff's premises, thereby injuring her right of access to and use of her property, and then transferred its railroad property to defendant railroad, which continued to operate it to plaintiff's damage, **held**, that defendant thereby attempted to profit by the tortious acts of its predecessor, and thereby became itself an independent trespasser, and was severally liable to plaintiff for the damage sustained, and hence defendant's predecessor was not an indispensable party to an action by plaintiff to recover original and permanent damages.

Smith, P. J., and McCoy, J., not sitting.

(Opinion filed August 10, 1914.   Rehearing denied September 16, 1914.)

Appeal from Circuit Court, Pennington County.   Hon. LEVI McGEE, Judge.

Action by Margaret Appel against the Chicago, Milwaukee & St. Paul Railway Company, to recover damages for interference with plaintiff's residence property by reason of the operation of defendant railroad in the street in front thereof.   From a judgment for defendant, and from an order denying a new trial, plaintiff appeals.   Reversed, and new trial granted.

*Schrader & Lewis,* for Appellant.

*Robert Burton,* and *Porter & Grantham,* for Respondent.

(2) Under point two of the opinion, Appellant submitted that: Plaintiff may, under the existing facts, sue defendant company without joining its predecessor company.   And cited:

Faulk v. Mo. Riv. & Northwestern R. R. Co., 132 N. W. 232 (S. D.) and cases cited in the opinion; Harbach v. Des Moines R. R. Co. (Ia.) 44 N. W. 348; Penn. M. L. Ins. Co. v. Heiss, 141 Ill. 35, 31 N. E. 138; Ft. Scott Co. v. Fox, 42 Kan. 490, 22 Pac. 583; Hulett v. M. T. K. R. R. Co., 80 Mo. Appeals, 87; Little Miami R. R. Co. v. Hamilton, 40 Ohio S. 496; Strickly v.

Chesapeake & O. R. R. Co. (Ky.), 20 S. W. 261; New York R. R. Co. v. Hammond, 123 Ind. 475, 32 N. E. 83; Lewis Eminent Domain, 3rd Ed. §§ 886, 887, 888.

Respondent submitted that: The White River Valley Railway Company is a necessary party. That defendant is not liable for damages caused by its predecessor; citing:

Guinn v. Ohio River R. Co. (W. Va.), 33 S. E. 87; Atchison, T. & S. F. R. Co. v. Anderson (Kan.), 69 Pac. 158; Denver & S F. Ry. Co. v. Hannigan (Colo.), 95 Pac. 343; Frankle v. Jackson, Receiver, etc., 30 Fed. 398.

POLLEY, J. Plaintiff, who is also appellant, is the owner of a number of town lots, with a dwelling house thereon, facing upon one of the streets in Rapid City. The building is occupied by plaintiff and her family as a residence. In her complaint she alleges that, while she was the owner of, and so occupying, said premises, and about the year 1907, the defendant, together with its predecessor in interest, the White River Valley Railway Company, located and constructed a railroad along and upon said street in front of plaintiff's said lots and dwelling house, and ever since said time has operated said railroad along said street, throughout its entire length, thereby rendering said street wholly impassable for vehicles and traffic, and destroying all means of egress and ingress to and from said lots, and diminishing the amount of light and air to which she would be otherwise entitled as an appurtenance to said premises; that, although defendant is vested with the right of eminent domain, no steps have ever been taken by defendant to ascertain the amount of damage caused plaintiff by the construction and operation of said railway; and that such construction and operation of said railway is without right or payment therefor. Plaintiff asks judgment that she recover damage in the sum of $1,000, and that such judgment be declared a first lien upon said railway and its appurtenances, and that, if said judgment be not paid within a time to be fixed by the court, said railway and appurtenances be sold to satisfy the same. The defendant, by its answer, denied that the property had been damaged $1,000, or any sum in excess of $75, and alleged that defendant had acquired said railway and right of way after the railway had been constructed and was in use, for value, and without any notice or

knowledge of plaintiff's claim that said right of way had been acquired from, and full compensation made therefor to, the rightful owner thereof, and that plaintiff acquired her interest in said lots subject to defendant's right of way and right to use the same, and after full compensation had been made therefor.

It appeared as a fact that, prior to the construction of the said railroad, the city council had, by ordinance, granted the said White River Valley Company the right to construct and operate said railroad along and over the said street.

At the trial, and while plaintiff was putting in her evidence, it appeared as a fact that the said White River Valley Railway Company owned said railroad and operated the same from the time of its construction—some time about the year 1907—to about April, 1910, when it was sold and transferred to defendant, who had operated it since that time. Upon this state of the case, defendant moved the court to dismiss the action, upon the ground:

"That it appears by the testimony now in evidence before the court that the injury to the property, if any, was suffered at a time prior to the ownership or any interest of the defendant company in the property; that the injury was done by another than the defendant in court, and presumably by the grantor of the defendant, the White River Valley Railroad Company, the damage having been done by the White River Valley Railroad Company, and cause of action having matured at the time of the injury; therefore, the defendant now in court is not liable to the plaintiff on account thereof, and for the foreclosure of any lien for damages by reason of such injury the White River Valley Railway Company is a necessary party under the record in this case, and the action cannot be maintained as against the Chicago, Milwaukee & St. Paul Company alone."

This motion was granted, and judgment entered dismissing the case at plaintiff's cost. A motion for a new trial was overruled, and plaintiff appeals.

[1] Defendant does not question plaintiff's title to the lots involved; neither does plaintiff claim to be the owner of the fee to the street, and is not trying to recover for the increased burden placed thereon by the construction and operation of the railroad. Her claim to damage is based solely upon the interference with the use and enjoyment of her said dwelling house and the lots upon

which it stands. The damage claimed therefor is consequential, rather than for a taking of any of her property; but that she has been damaged in the use and enjoyment of her property, to some extent, by the construction and operation of the railroad is admitted. It must also be conceded that the damage is what is known as original and permanent damage, and not a case of a continuing nuisance giving rise to a new cause of action from day to day during the continuance of the nuisance. This leaves for consideration but the single question: May the plaintiff recover her damage from the defendant (the present owner of the railroad), or must such damage, if recovered at all, be from the White River Vally Railway Company, the company that owned the same at the time of, and for some time following, its construction?

The measure of plaintiff's damage is the difference between the value of the property immediately before and immediately after the construction of the railroad. This having been done by the White River Valley Railway Company, it was this company, of course, that caused the damage; and, under respondent's theory, it is from this company alone that recovery can be had; respondent contending that it is not liable for damages caused by its predecessor. In this position respondent claims to be supported by the weight of authority, and cites and relies upon the following authorities: Guinn v. Ohio River R. R. Co., 46 W. Va. 151, 33 S. E. 87, 76 Am. St. Rep. 806; Atchinson, T. & S. F. Ry. Co. v. Anderson, 65 Kan. 202, 69 Pac. 158; Denver & S. F. Ry. Co. v. Hannegan, 43 Colo. 122, 95 Pac. 343, 16 L. R. A. (N. S.) 874, 127 Am. St. Rep. 100; and Frankle v. Jackson et al. (C. C.) 30 Fed. 398.

[2] While it is true that these cases appear to support respondent's contention, it is also true that none of them present the same situation as the case at bar. In Guinn v. Ohio River R. R. Co. the railroad causing the damage was constructed by one company under a license from the city, and, after it had been operated for some time, was leased to another company. The action was against the lessee. The court held that "a lessee railroad company is not liable for a completed tort of its lessor railroad company," and that the lessor was liable if either was. In Atchinson T. & S. F. Ry. Co. v. Anderson the railroad causing the damage was constructed and put into operation by one company under a license

from the city, and thereafter leased to another company. The
action was brought against the lessee alone. The court reversed
the judgment against the lessee, but the reversal seems to be based
upon the ground that there had been no change of ownership of
the road, the court saying:

"In this case there was never any change of ownership, but,
on the contrary, the company which laid down the track in 1889
owned it at the time this action was commenced in the court be-
low and when the defendant in error obtained judgment against
the Sante Fe Company."

—clearly implying that, had the defendant taken by purchase in-
stead of by lease, plaintiff might have recovered.

In Denver & Sante Fe Railway Company v. Hannegan, supra,
the railroad was constructed under a permit of the city council,
and, after being operated for a period of five years by the com-
pany that constructed it, was sold to the defendant, who imme-
diately leased it to a third company, who was operating it at the
time the action was commenced. It also appeared that, some time
after the commencement of the action, but prior to the trial, the
rails and ties used in the construction of the road were torn up
and removed, and the street was entirely abandoned for railway
purposes. Plaintiff had judgment, which, on appeal, was reversed,
the court saying:

"Where, as in the case at bar, nothing appears in the record
either by pleadings or proofs tending to show that the sale was
made upon inadequate consideration, or that it was characterized
by bad faith in any manner, the purchaser takes the property
without liability for the payment of the vendor's unsecured debts.
'Where a corporation transfers all of its assets to another corpora-
tion, which does not agree to assume the liabilities of the selling
corporation, and both corporations maintain a separate existence,
then, in the absence of fraud, the purchasing corporation will not
be answerable for any debts of the selling corporation' "—citing
10 Cyc. 1268; Goldmark v. Magnolia Metal Co., 44 App. Div. 35,
60 N. Y. Supp. 425; Brundred et al. v. Rice, 49 Ohio St. 650, 32
N. E. 169, 34 Am. St. Rep. 589; Montgomery Web Co. v. Dienelt,
133 Pa. 585, 19 Atl. 429, 19 Am. St. Rep. 663.

The court was not satisfied to rest its conclusion upon this
ground alone, however, and emphasized the fact that the action

was not commenced for more than six years after the construction of the road; that, at the time of the purchase by the Denver & Sante Fe Company, it had no notice or knowledge that plaintiff claimed compensation from the company that constructed the road; nor that either of the defendants had any intimation of such claim until the commencement of the action. In Frankle v. Jackson et al. a railroad was so constructed and operated on one of the streets of the city as to damage the abutting property of the plaintiff. Thereafter, but prior to the commencement of the action, the road was placed in the hands of a receiver, and plaintiff named the receiver as defendant. The court went no further, so fas as the case at bar is concerned, than to hold that the receiver was a proper party defendant, although the question of proper parties defendant was not at issue in the case. In none of these cases is any reference made to the constitutional rights involved; nor, in fact, can it be inferred from anything said in any of these decisions that the states where such decisions were rendered have constitutional provisions similar to section 13, art. 6, of our Constitution. This section reads as follows:

"Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained, and before possession is taken. * * * "

Under this provision, plaintiff was entitled to compensation for the injury caused by the construction and operation of the railroad. She was entitled to such compensation from the White River Valley Railway Company; and, because such compensation was not paid, that company, so far as the rights of this plaintiff are concerned, was a trespasser, and was invading her rights so long as it continued to operate the road. It acquired no rights as against her, and, as against her, it could convey no rights to its grantee and successor in interest. When the defendant took over and assumed the operation of the railroad, it became an independent trespasser. It was as much a wrongdoer as its predecessor had been while it was operating the road and under the same obligation to compensate plaintiff that its predecessor had been. Any other rule would enable a person or company to appropriate another's property, either by actual taking or damaging, and then, by sale or other disposition, leave the damaged party wholly remedi-

less.   It is conceded by respondent that the railroad property, when conveyed to it, was subject to a lien for the amount of plaintiff's damage, and no reason is suggested why such damage cannot be assessed and such lien foreclosed without the presence, as a party defendant, of the respondent's predecessor in interest. · It is not claimed that the road was sold to respondent under any warranties against claims for damages such as plaintiff's, and, if it were, such warranties could in no wise affect the rights of the plaintiff.   If the presence of such predecessor became necessary in order to adjust the rights between it and the defendant, then it would be incumbent upon the respondent, and not upon the plaintiff, to bring such predecessor into the case.   This not only seems consonant with right and justice, but in harmony with the trend of modern judicial opinion.   Penn. Mut. Life Ins. Co. v. Heiss, decided by the Supreme Court of Illinois, 141 Ill. 35 31 N. E. 138, 33 Am. St. Rep. 273, is a leading case in support of this doctrine.   After the injury complained of had been caused, the railroad causing the same was sold to plaintiff in error.   After the sale, suit was brought and judgment recovered against plaintiff in error alone for the recovery of damages to abutting property.   The contention was made, just as it is made here, that the action could not be maintained against plaintiff in error without joining with it the company that had owned the railroad when the damage was caused.   The judgment was sustained, the court, in the course of the opinion, saying:

"Private property is by the constitutional guaranty secured against being thus damaged for such public use without compensation.   Therefore to hold that a railroad may occupy the streets of a city, and thereby damage the private property of abutting or adjacent lot owners, and, by reason of alienation, or its insolvency, may continue the occupancy and infliction of the injury without indemnifying such owner, is to render the constitutional provision nugatory, and the safeguard specifically intended by the people to be thrown around the citizen in the protection of the right of private property is rendered of no avail.   It may be, as we have before seen it has been held, that the citizen is remediless until the damage has actually occurred, and by appropriate remedy he has determined the extent and amount thereof.   But when the damages are ascertained in the mode provided by law, the right

of the lot owner to the payment of the same as compensation is guaranteed to him by the Constitution as a condition to the continued appropriation of the street to the public use, whereby the injury to his private property is inflicted.  As we have seen, it is not in the power of the railroad, by alienation or otherwise, to defeat this constitutional guaranty; and the alienee, purchaser, or successor will be required to take notice of the provisions restricting the power to take or damage private property for public use, and be held to take subject to the burden cast upon the railroad by, through, or under whom the interest is acquired.  It by no means follows, as seems to have been supposed in some of the cases, that a right of action would exist against the new company, who might, as successor to the original railroad company, become possessed of the franchise and property; but when a mortgagee or a successor company insists upon a continuation of the use, or where there is an appropriation of that part of the railroad whereby the damage has been occasioned, the right of the lot owner to compensation out of the rest is absolute."

Ft. Scott, W. & W. Ry. Co. v. Fov, 42 Kan. 490, 22 Pac. 583, is a case where one company was sought to be held liable for damages caused by the construction and operation of a railway that had been constructed by a preceding company in a public street. In the course of the opinion, the court said:

"The principal contention of the plaintiff in error is that it cannot be held liable in any way for these damages, for the reason that the road was built, and the nuisance created, by the St. Louis, Ft. Scott & Wichita Railroad Company.  It is true that a sale made as alleged would convey a title to the purchasing company free from all claims for the general debts of the old company, but the liability for either the creation or continuance of the nuisance does not fall within that class.  The old company was a wrongdoer, and had acquired no right to deprive Fox of the use of the street as a means of access to his lots.  The company had made no compensation for this appurtenance to his property, nor had he in any way released or waived his claim for damages.  The old company, having no right in this appurtenance, could convey none, nor could the claim for the continuing wrong and injury be divested by a sale under the mortgage foreclosure.  If the owner had consented to the appropriation in any way, or had stood silent for

a long time, with knowledge of the occupancy, a different question, would arise; but in this case he promptly pressed his claim for damages against the old company, and, when the transfer of the property and franchises was made, he as promptly adapted his pleadings to the change of ownership, and proceeded against the new company. There has been neither waiver nor payment of the claim for damages. The obstruction and nuisance has been continued by the purchasing company, and, while it cannot be held liable for the wrongdoing of the old company, it cannot escape liability for the injury inflicted after it purchased and took possession of the road. The blocking of the street and continuance of the nuisance by the new company is as great an injury to the lot owner as though that company had originally built the road and created the nuisance. It might have limited its liability if, after taking possession of the road, it had restored the street to its former condition, or to such a condition as not materially to impair its usefulness as a means of access to and from the property. Assuming the facts to be as stated, the company has chosen to block and appropriate the entire street for its own purpose, and both the company and the owner have treated the appropriation as a permanent one. For this permanent appropriation the plaintiff in error must respond in damages if the proof sustains the averments of the petition."

And, in Stickley et al. v. Chesapeake & Ohio R. R. Co. et al., 93 Ky. 323, 20 S. W. 261, the Court of Appeals of Kentucky said:

"It seems to us there can be no good reason assigned for relieving a vendee from all liability for an injury that amounts to an invasion of another's property while his possession is based upon no other title than a tortious entry by his vendor. The act of the vendor in appropriating the property being wrongful, that of his lessee is equally so; and, while the lessee may not be liable for the mode of the original entry, he is nevertheless liable for appropriating this property to his own use. There is no question of limitation involved in this case. A railroad company who enters upon and appropriates the land of another to its own use, without right, cannot transfer its corporate privileges to another, so as to justify a continuance of the wrong in its vendee, as if the latter was an innocent purchaser. It is a taking, in both instances, without compensation being personally made to the owner. * * * But

where the proximity of the road to the dwelling is such as to prevent the reasonable ingress and egress to and from the premises, or to cause necessarily soot and cinders to enter the dwelling, then it becomes a taking of private property for public use, and for which compensation must be made. Fulton v. Transfer Co., 85 Ky. 640, 4 S. W. 332 [7 Am. St. Rep. 619]; Railroad Co. v. Finley, 86 Ky. 294, 5 S. W. 753. Lewis Em. Dom., says: 'No right can be acquired in private property, under the power of eminent domain, except subject to the duty of making just compensation therefor; consequently the party originally taking or occupying the property cannot transfer to another, by lease or otherwise, any right in the property, except subject to the same duty.' "

And in line with these decisions is the decision of this court, Faulk v. Missouri R. & N. W. Ry. Co., 28 S. D. 1, 132 N. W. 233, an action to recover for a right of way across plaintiff's land that had been appropriated by defendant's predecessor in interest more than 16 years before the commencement of the action. In the majority opinion written by Corson, J., the court say:

"It seems also to be well settled that the present railway company, defendant, is legally and equitably liable as the successor of the former company for the value of the premises used by it, belonging to the plaintiff, and that before it can legally occupy and posses the same for its railroad purposes it must satisfy the claim of the plaintiff for its value. This rule seems to be established upon the principle that the present railway company is no more entitled to occupy and use the premises without paying for the same than was its predecessor. Its use of the premises is therefore without right as against the plaintiff, and the present railway company and the trust company, as trustee in the mortgage for the bonds issued, clearly hold their interest therein, subject to the superior right and claim of the plaintiff to be paid for the premises owned by him."

While that was an action to recover for the physical taking of the property and this is an action based upon the interference with the owner's occupancy and enjoyment of his property, the principle governing in both cases is the same. In each case the present owner of the road is attempting to profit by the tortious

acts of its predecessor.    Respondent undertakes to distinguish that case from the case at bar, arguing that:

"Defendant company was in possession of the plaintiff's property without title.    The plaintiff had not lost his right to injunction or his remedy by ejectment, and could have had either except for the public interest involved."

But this argument refutes itself; for, because of the "public interest involved" neither remedy was available to the plaintiff. The same is true of the case at bar.    In fact, the two cases are quite analogous, and the principle applicable to one is applicable to the other.    On the whole, it seems to us that the plaintiff is entitled to recover from the defendant for the depreciation in the value of her property caused by the construction and operation of the railroad in question, and that the trial court was in error in not submitting the case to the jury.

The judgment and order appealed from are reversed, and a new trial granted.

SMITH, P. J., and McCOY, J., not sitting.