12323

WHITE v. SOUTHERN RAILWAY CO. ET AL.

(140 S. E., 560)

1. APPEAL AND ERROR—ADMITTING TESTIMONY OF STATEMENTS OF AGENT WITHOUT SHOWING AUTHORITY TO BIND RAILROAD HELD HARMLESS, WHERE STATEMENTS DID NOT AFFECT MATTER IN ISSUE.—In action against railroad for damage to plaintiff's property from increasing grade of highway above level of plaintiff's property to permit

underpass for railroad, permitting plaintiff to testify as to statements made by defendant's agent, without showing his authority to bind defendant by making statements as to raising of highway, *held* harmless, where record did not show evidence of statement made by agent with reference to raising of grade.

2. APPEAL AND ERROR—EXCEPTION FIRST URGED ON APPEAL TO ADMISSION OF EVIDENCE IS NOT PROPERLY BEFORE COURT.—Where record does not show there was any objection to admission of testimony of conversation between plaintiff and alleged agents of defendants regarding raising of highway grade, exceptions urged thereto for the first time on appeal are not properly before Court.

3. APPEAL AND ERROR—ADMITTING EVIDENCE OF CONVERSATIONS BETWEEN PLAINTIFF AND DEFENDANTS' AGENTS SEVERAL MONTHS AFTER DEED FROM PLAINTIFF TO RAILROAD HELD HARMLESS.—In action against railroad for damages to plaintiff's property due to increasing grade of highway to permit underpass for railroad, error, if any, in admitting evidence of plaintiff's conversation with, and statements, made by, defendants' agents regarding raising of highway, made several months after plaintiff's deed to railroad, was harmless, where defendants' agents merely stated that railroad was not interested in the fill.

4. EMINENT DOMAIN—ADMITTING EVIDENCE AS TO BUMP IN HIGHWAY BEYOND PLAINTIFF'S PROPERTY TO SHOW GENERAL CONDITIONS, IN ACTION FOR DAMAGES FOR RAISING GRADE TO PERMIT UNDERPASS OF RAILROAD, HELD NOT ERROR.—Where plaintiff deeded land to railroad for use as a right-of-way in constructing belt line, in action for damage to remaining property fronting on highway due to raising grade thereof to permit underpass for railroad, admitting testimony as to bump in highway across railroad beyond plaintiff's property, to show general conditions relevant to whole situation, was not error.

5. APPEAL AND ERROR—GROUND OF OBJECTION, NOT RULED ON, CANNOT BE URGED ON APPEAL.—A ground of objection, not ruled on by presiding Judge, cannot be urged in the Supreme Court.

6. APPEAL AND ERROR—ADMITTING TESTIMONY THAT SUPERVISOR REFUSED PERMISSION FOR RAILROAD TO CROSS HIGHWAY HELD NOT PREJUDICIAL, WHERE LATER RAILROAD WAS PERMITTED TO RAISE HIGHWAY.—Where plaintiff deeded railroad right-of-way for belt line, in action for damages to remaining property fronting highway, due to raising grade thereof, to permit underpass for railroad, admission of testimony that supervisor of highways refused to give railroad permission to cross highway *held* not prejudicial error, where State Highway Commission later granted railroad permission to raise highway, and action was brought for damages from actual raising of highway in accordance with such permission.

7. APPEAL AND ERROR—GENERAL OBJECTION TO PLAINTIFF'S TESTIMONY AS TO KNOWLEDGE OF ELEVATION OF BRIDGE AS AFFECTING DAMAGES FROM CHANGE OF GRADE HELD INSUFFICIENT.—Where plaintiff deeded property to railroad for construction of belt line, in action for damage to his remaining property fronting highway, due to raising of grade to permit underpass for railroad, general objection to admission of plaintiff's testimony that, had he seen map on file, he would have known nothing about elevation of bridge, is not properly before Court, and exception thereto cannot be considered.

8. APPEAL AND ERROR—QUESTIONS NOT RAISED IN TRIAL COURT CANNOT BE FIRST URGED ON APPEAL.—Questions not raised in any form in trial Court cannot be raised for first time on appeal.

9. EMINENT DOMAIN—WHERE CHANGE OF GRADE OF HIGHWAY IS MADE FOR RAILROAD'S BENEFIT, ABUTTING PROPERTY OWNERS ARE ENTITLED TO COMPENSATION FOR RESULTING INJURIES (CONST. ART. 1, § 17).— Where change of grade of highway is made by or for benefit of a railroad, abutting property owners, under Const. Art. 1, § 17, are entitled to compensation for resulting injuries.

10. EMINENT DOMAIN—THAT CHANGE IN GRADE OF HIGHWAY IS MADE WITH MUNICIPALITY'S CONSENT DOES NOT RELIEVE RAILROAD BENEFITING FROM CHANGE FROM LIABILITY FOR PROPERTY "TAKEN" (CONST. ART. 1, § 17).—Where change of grade in highway is made by or for benefit of railroad, and, under Const. Art. 1, § 17, providing that private property shall not be "taken" without compensation, abutting owners are entitled to compensation for resulting injuries, fact that change is made with consent of municipality or State does not relieve railroad from liability for injuries arising therefrom; "taken," within Section 17, not being limited to cases of actual physical seizure and holding of property, but includes cases in which access to abutting premises is obstructed by change of grade of highway.

11. EMINENT DOMAIN—INJURIES FROM RAISING HIGHWAY GRADE HELD NOT SO CONNECTED WITH CONSTRUCTION OF RAILROAD AS TO BE INCLUDED IN DEED IN LIEU OF CONDEMNATION PROCEEDING (CIVIL CODE 1922, § 4993).—Injuries resulting from raising of highway on lands not conveyed to railroad, but entirely independent of such lands, in order to grade approach to overhead bridge across right-of-way conveyed, *held* not element of damages so closely connected with construction or operation of railroad on premises conveyed as to bring them within consequential damages flowing from construction and operation of railroad so as to raise presumption that they are included in deed in which railroad was released from damages from construction of railroad, and given in lieu of condemnation proceeding under Civ. Code 1922, § 4993.

12. Eminent Domain—Whether Raising Grade of Highway was Contemplated in Execution of Deed, Releasing Railroad from Damages for Railroad's Construction, held for Jury.—Where plaintiff deeded land to railroad for use as right-of-way in constructing a belt line, conflicting evidence as to whether parties contemplated raising of highway when deed was executed, and under which railroad was released from damages for railroad's construction, made issue of fact thereon, which was properly submitted to jury.

13. Eminent Domain—Provision in Deed that Consideration Included Damages from Construction and Maintenance of Railroad held not to Include Injury from Raising Highway Grade.—Provision in deed of land for use as right-of-way in constructing belt line that grantors agreed that consideration included value of land conveyed, and all incidental or consequential damages accruing to grantors' adjacent lands from construction and maintenance of railroad on land conveyed, *held* not to include injuries to grantors' remaining property by raising grade of highway.

14. Trial—In Action for Damages from Change of Grade, Refusal of Charges Adequately Covered by General Charge held not Error.—In action against railroad for damages arising from change of grade of highway in front of plaintiff's property to permit underpass of railroad, refusal of defendants' charges, substance of which were adequately covered by general charge given, was not error.

15. Trial—Failure to Timely Object to Improper Argument is Waiver of Right to Object Afterwards.—While improper argument to jury will not be condoned or allowed, it is necessary that Court's attention be called thereto by timely objection by opposing counsel, and failure to make such objection is waiver of right to object afterwards.

16. New Trial—Refusal of New Trial for Argument, Unsupported by Record, held Proper, where Timely Objection Thereto was not Made.—In action against railroad for damages to property due to raising of grade of highway fronting it, refusal of new trial for alleged improper argument of counsel, regarded as being unsupported by record, was not error, where opposing counsel failed to make timely objection.

Cothran, J., dissenting.

Before Featherstone, J., Spartanburg, March, 1926. Affirmed.

Action by A. L. White against the Southern Railway Company and another. From a judgment for plaintiff, defendants appeal.

*Messrs. DePass & Wrightson,* and *F. G. Tompkins,* for appellants, cite: *Change of grade of a public highway does not constitute the taking of private property; injuries to abutting property owners thereto dammum absque injuria:* 36 L. R. A. (N. S.), 673; Id., 796; 53 S. C., 575; 110 S. C., 321; 232 Pac., 578; 8 A. L. R., 15. *Same, liable only where changes are extraordinary and unusual:* 85 Pac., 849; 7 L. R. A. (N. S.), 108; 128 Pac., 888; 88 Atl., 47; 46 L. R. A. (N. S.), 1128; 92 Atl., 532; L. R. A., 1916-C, 433. *Acquisition of right of way carries with it all consequential damages which were reasonably within the contemplation of the parties:* 33 Cyc., 161; Id., 182; 154 Pac., 173; 23 Atl., 827; 91 S. E., 198; 63 S. E., 412. *Measure of damages where railroad corporations institute proceedings of eminent domain:* Sec 4993, Code; 71 S. C., 421; 110 S. C., 449. *If improper remarks before jury are of such a character that neither rebuke nor retraction can destroy their sinister influence, a new trial should be granted regardless of want of objection:* 2 R. C. L., 441; 92 S. C., 236; 46 L. R. A., 541; 131 S. E., 605; 13 Fed. (2nd), 594. *Cases distinguished:* 61 Atl., 87; 43 So., 611; 75 Atl., 183.

*Messrs. Nicholls, Wyche & Byrnes,* for respondent, cite: *Railroad company relieved from damages arising from construction of railroad upon acquired right of way only:* 9 So., 203; 14 Ill. App., 419; 61 Atl., 87; 22 R. C. L., 897; 43 So., 611; 75 Atl., 183. *Liable for damages arising from raising of highway:* 67 S. C., 515; 54 S. C., 202; 1 McC., 67; 81 S. C., 312; 126 S. C., 496; 59 S. C., 571; Elliot R. R., Sec. 1085; 13 R. C. L., 119; 117 S. C., 251; 221 U. S., 636; 22 R. C. L., 897; 10 Pa. S. Ct., 647; 24 Atl., 361; 2 Atl., 262; 7 App. D. C., 482; 87 S. E., 133; 100 S. E., 424; 134 S. E., 367; 64 S. C., 444; 49 S. E., 296; 79 S. E., 36; 14 S. E., 847; 54 S. E., 148; 77 S. E., 193; 92 S. W., 836; 10 Ky. L. R., 1061; 33 S. E., 87; 14 N. W., 273; 35 Atl., 59; 15 Cyc., 665; 5 S. W., 753; 6 N. E., 663;

36 L. R. A. (N. S.), 796; 19 N. W., 56. *Where no objection to argument of counsel made at trial, the question will not be reviewed on appeal:* 111 S. C., 405; 91 S. C., 139; 98 S. C., 121; 118 S. C., 24. *Grounds for nonsuit or a directed verdict not presented to Circuit Judge, not considered on appeal:* 63 S. C., 559; Circuit Court Rules, 17, 18. *Cases distinguished:* 2 Pac., 6.

November 22, 1927.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The statement of fact in this case follows more or less closely the well-prepared statement contained in the printed argument of appellant's counsel.

The case involves an appeal from a judgment based on a verdict of $15,000 against the appellants, which grew out of a suit for damage to real property of the respondent instituted by him on July 3, 1925, in the Court of Common Pleas for Spartanburg County.

The respondent, together with his brother, his son, and his daughter, executed an option giving the Southern Railway Company the right to purchase, for the sum of $25,000, certain property for use as a right of way in constructing a new belt line, the option being dated March 19, 1924, and running for 60 days, but being thereafter extended to June 5, 1924. The option refers to the lands as "more particularly shown on plat of Southern Railway right of way made February 4, 1924, and on file in the office of the Chamber of Commerce of Spartanburg, S. C.," and contains the following provision:

"Said consideration is to be in full settlement of all damages to our property as well as for the purchase price thereof."

Respondent and his brother, on May 31, 1924, executed a deed of conveyance to Southern Railway-Carolina Division, conveying for railroad purposes the lands owned by

them and described in the option, the consideration paid
being $11,000. The deed contains the following provisions:

"It is understood by the grantors that the land herein-
before described and hereby conveyed will be used by the
grantee in the construction, maintenance, and operation of
·a railroad, and the grantors, for themselves, their heirs and
personal representatives further agree that the consideration
hereinbefore recited and paid by the grantee includes, not
only the value of the said land hereby conveyed, but also all
and any incidental or consequential damages accruing to
other and adjacent lands of the grantors from or on ·ac-
count of construction and maintenance of said railroad upon
the land hereinbefore described and hereby conveyed."

The right of way of the proposed belt line crossed in a
general direction from east to west underneath the public
highway.known as state highway No. 8, which is an exten-
sion of East Main Street of the City of Spartanburg, al-
though the property in controversy in this case lies outside
the city limits. Respondent was one of the citizens of
Spartanburg to guarantee $250,000 to aid in the construction
of the belt line.

Respondent's brother subsequently died, leaving to him
by will the remaining half interest in the balance of the
tract of land out of which the right of way was sold. The
land lies on both sides of the highway, having a total front-
·age thereon of about 770 feet.

On December 9, 1924, on petition of the Southern Rail-
way Company, an order was obtained from the state high-
way commission permitting that company to construct at
its own expense an underpass for the belt line under state
highway No. 8, and allowing it to raise the grade of the
highway sufficiently to carry traffic over a concrete bridge
to be constructed on the highway; the order stating that
"Southern Railway Company hereby assumes all respon-

sibility for any damage that may arise from the change or elevation of the grade of said highway."

Where respondent's property fronted on the highway, prior to the construction of the underpass, the highway was already at a grade above the level of respondent's property, and in preparing the approaches to the bridge appellants increased this fill several feet.

For alleged damage to his remaining property fronting on the highway, due to such raising of the grade, respondent brought this suit. At the close of the testimony appellants moved for a directed verdict upon the ground that all the elements of damage claimed by the respondent are covered by the release which he executed to Southern Railway-Carolina Division, in his deed of May 31, 1924. This motion was denied, and the case submitted to the jury, who rendered a verdict of $15,000 in favor of the plaintiff. A motion for a new trial was overruled, and judgment on the verdict was entered against appellants.

The matter comes before this Court upon thirteen exceptions, which will be considered in regular order.

First exception:

1     "The Court erred in allowing respondent to testify as to statements made by Major Bernard; the error being that there was no evidence of his having any authority to bind appellants by making any statement as to the raising of the highway."

Respondent testified that Major Bernard was a representative of the railway company, and was the first man who came to see him about procuring the right of way for the company. But it does not appear in the record that respondent testified to any statement made by Major Bernard with reference to the raising of the grade. The testimony as to what Major Bernard actually said was harmless. There was no error.

Second exception:

2, 3    "The Court erred in allowing the respondent to testify as to conversation with and statements made by Major Bernard and Mr. Pearce Horne regarding the raising of the highway; the error being that the evidence shows that these conversations and statements were had and made several months after the deed from respondent to appellants dated May 31, 1924, and were therefore incompetent."

We have already discussed the testimony as to Major Bernard's statements. When the respondent was on the stand, he related a short conversation, which, after the execution of the deed, he had with Mr. Horne, a representative of the railroad company, with reference to the damage which respondent claimed was being done to his property by the raising of the grade of the highway. The record does not show that there was any objection to the admission of the testimony, and the question, raised here by exception for the first time, is not properly before this Court. But, even if the testimony had been objected to, its admission was harmless, as Mr. Horne merely said, as disclosed by the record, that the Southern Railway was not interested in the fill. This statement could have had no effect other than to deny the railroad's liability, which position the railroad takes by its answer in this suit, and still maintains.

Third exception:

4    "The Court erred in allowing respondent, A. L. White, and the witness, H. B. Stribling, to testify as to a bump in the highway on the west, or city side, of the bridge, and in refusing the motions to strike out the same; the error being that such evidence related to that portion of the highway across the railroad, beyond respondent's property, and is not within the compass of the damages sued for in the complaint."

While the testimony shows that the "bump" in the highway is beyond respondent's property, it also shows that the bridge over which the highway passed and the approach to which is involved in this action was located on the "bump," and there was no error in admitting the testimony, in order to show, as stated by the trial Judge, general conditions relevant to the whole situation.

Fourth exception:

5, 6 "The Court erred in allowing respondent to testify what happened before Supervisor Vernon, and that Supervisor Vernon refused to give appellants permission to cross highway No. 8; the error being that the supervisor of Spartanburg County had no jurisdiction in the premises, and whatever he did could have no bearing on respondent's cause of action."

When the respondent offered testimony as to a conference with the County Supervisor, appellants' counsel objected to the testimony on the ground that the respondent had already proved that the County, after the respondent protested, tore down the fill, and that subsequently the Southern Railway rebuilt it, but the Court overruled the objection. When the respondent was asked whether the supervisor gave the Southern Railway permission to cross highway No. 8, appellants' counsel objected on the ground that the railway company was not represented at the conference, but the Court allowed respondent to testify that the supervisor did not give such permission. No objection to the testimony was made on the ground that the supervisor had no jurisdiction in the matter; this objection being raised here for the first time by exception. It is a well-established principle that a ground of objection not ruled upon by the presiding Judge cannot be urged in this Court. *Allen v. Cooley,* 53 S. C., 77; 30 S. E., 721; *Norris v. Clinkscales,* 59 S. C., 232; 37 S. E., 821; *Colvin v. Oil Co.,* 66 S. C., 61; 44 S. E. 380; *General Electric Co. v. Blacksburg Land*

*& Improvement Co.,* 46 S. C., 75; 24 S. E., 43; *Jones v. Devereaux,* 90 S. C., 513; 73 S. E., 1027; *Smith v. Union Buffalo Mills Co.,* 100 S. C., 120; 84 S. E., 422. But, even if the testimony had been properly objected to and its admission erroneous it was not prejudicial, since the state highway commission, the body having authority in the matter, later granted the appellants permission to raise the highway, and this action is brought for damages alleged to have been suffered from the actual raising of the highway in accordance with such permission.

Fifth exception:

"The Court erred in allowing respondent to testify in reply that, if he had seen the map on file in the Chamber of Commerce, he would not have known anything about the elevation of the bridge; the error being that, after he had signed the option, of which the map was a part, he was bound by whatever it disclosed."

When the testimony involved in this exception was offered at the trial of the case, appellants' counsel made a general objection without stating any grounds therefor. This objection, therefore, is not properly before this Court, and the exception cannot be considered. *State v. Rucker,* 86 S. C., 66; 68 S. E., 133; *State v. Bigham,* 119 S. C., 368; 112 S. E., 332; *State v. Holley,* 136 S. C., 68; 134 S. E., 213, and numerous other cases.

Sixth exception:

"The presiding Judge erred in refusing to direct a verdict in behalf of the appellants upon the following grounds: Because all the elements of damage claimed by respondent in this case are covered by the release which he executed to appellant Southern Railway-Carolina Division in his deed to it dated May 31, 1924; and the evidence shows that the respondent has received payment for all such damages from the appellant Southern Railway-Carolina Division, and did release the same to said company; the error

being that the release as pleaded in the answer, and the release as described in the option, introduced in evidence, is a complete bar to this action."

This exception involves the construction of the release contained in respondent's deed of May 31, 1924, and raises the most important point of the appeal.

In his argument on this exception appellants' counsel contended that, as a matter of law, under the facts of the case, appellants are not liable to the respondent for any damages arising from the change of grade of the highway. This question was not raised in any form in the trial Court, and cannot be raised for the first time on appeal. *Hicks v. Railway,* 63 S. C., 559; 41 S. E., 753; *Rhode v. Tuten,* 34 S. C., 496; 13 S. E., 676. But, even if the point had been made in the lower Court it could not be sustained.

The appellants cite Article 1 of Section 17 of the State Constitution as follows:

"Private property shall not be taken  *  *  * for public use without just compensation being first made therefor,"

—note the omission of a similar provision for compensation when property is "damaged" or "injured" for public use; contend that under such provision a change of grade of a public highway or street by a municipality, or a state or subdivision thereof, does not constitute a *taking* of private property, and hence whatever injury the abutting property owners suffer is *damnum absque injuria;* cite the case of *Garraux v. Greenville,* 53 S. C., 575; 31 S. E., 597, in support of their position; and suggest that, where a railroad undertakes to change the grade of an existing street or highway for its own benefit under permission of a State or municipality, the immunity from damages should be extended to the railroad.

The Garraux case involved, as indicated, the change of the grade of a street by a municipality—not by a railroad

—and the appellants frankly recognize the distinction between cases of that kind and those cases in which the change of grade is made by, or for the benefit of, a railroad. In so far as the latter class of cases is concerned, abutting property owners are entitled to compensation for resulting injuries. Nor does the fact that the change in the grade of the highway is made with the consent of the municipality or State relieve the railroad company from liability for injuries that may arise from such change. *Coyne v. Memphis,* 118 Tenn., 651; 102 S. W., 355; *Dana v. Rock Creek Railway Co.,* 7 App. D. C., 482; *Penn. Co. v. Stanley,* 10 Ind. App., 421; 37 N. E., 288; 38 N. E., 421; *McNulta v. Ralston,* 5 Ohio C. C. 330; 3 Ohio C. D., 16; *Jersey City v. Central Railway Co.,* 40 N. J. Eq., 417; 2 A., 262; *L. & N. Railway Co. v. Finley,* 86 Ky., 294; 5 S. W., 753; *Pittsburg, C. C. & St. L. Railway Co. v. Atkinson,* 51 Ind. App., 315; 97 N. E., 353; *Chicago, I. & L. Railway Co. v. Johnson,* 45 Ind. App., 162; 90 N. E., 507; *Smith v. Railway Co.,* 181 N. Y., 132; 73 N. E., 679; 20 C. J., 699, and cases cited in note 86; 22 R. C. L., 897; *Kaufman v. Tacoma, O. & G. Harbor Railway Co.,* 11 Wash., 632; 40 P., 137; *Burritt v. New Haven,* 42 Conn., 174; *Walters v. B. & O. Railway Co.,* 120 Md., 664; 88 A., 47; 46 L. R. A. (N. S.), 1128; *Baltimore, City of, v. Kahl,* 124 Md., 299; 92 A., 770; *Atlantic & B. Railway Co. v. McKnight,* 125 Ga., 328; 54 S. E., 148; *Railway Co. v. Crabtree,* 2 Willson, Civ. Cas. Ct. App. (Tex.), § 662.

The appellants concede that the authorities apparently hold that, if the change of grade is made for the exclusive benefit of the railroad, it is liable for any resulting damage to abutting property owners; but make a distinction between an interference with property which amounts to a taking thereof and an interference which amounts to mere inconvenience, and contend that, where mere inconvenience results, the railroad is not liable and that such is the case here.

The word "taken" in the constitutional provision cited is not limited in its meaning and application to cases in which there is an actual physical seizure and holding of property, but is broad enough to include cases in which the access to abutting premises is obstructed by the change of grade of a highway or there is such physical injury to property as results in destruction or substantial impairments of its usefulness.  See 20 C. J. 697, and the following cases therein cited:  *Nevins v. Peoria,* 41 Ill., 502; 89 Am. Dec., 392; *Tinker v. Rockford,* 36 Ill. App., 460; *Hendershott v. Ottumwa,* 46 Iowa, 658; 26 Am. Rep., 182; *Offutt v. Montgomery County,* 94 Md., 115; 50 A., 419; *Vanderlip v. Grand Rapids,* 73 Mich., 522; 41 N. W., 677; 3 L. R. A., 247; 16 Am. St. Rep., 597; *Broadwell v. Kansas,* 75 Mo., 213; 42 Am Rep., 406; *Mosier v. Oregon Nav. Co.,* 39 Or., 256; 64 P., 453; 87 Am. St. Rep., 652; *Stearns v. Richmond,* 88 Va., 992; 14 S. E., 847; 29 Am. St. Rep., 758; *Kincaid v. Seattle,* 74 Wash., 617; 134 P., 504; 135 P., 820; *Damkoehler v. Milwaukee,* 124 Wis., 144; 101 N. W., 706; *Forbes v. Orange,* 85 Conn., 255; 82 A., 559; *Walters v. Baltimore, etc., R. Co.,* 120 Md., 644; 88 A., 47; 46 L. R. A. (N. S.), 1128; *Coyne v. Memphis,* 118 Tenn., 651; 102 S. W., 355; *Hamilton County v. Rape,* 101 Tenn., 222; 47 S. W., 416.

This question is settled in this State by the cases of *South Bound Railway v. Burton,* 67 S. C., 515; 46 S. E., 340, and *Wilson v. Greenville County,* 110 S. C., 321; 96 S. E., 301.

In the *Burton case* the Court said:

"Hence the building and operation of a railroad through a street cannot be regarded such a street use as to require the abutting land owner to submit to the total or partial destruction of the value of his property without compensation. *Causing such depreciation is clearly destroying or taking property.* Property is not only ownership of particular lands or chattels, but it embraces the value they have by reason of

their legal relations to all other things. * * * An abutting land owner has a special property in the benefits derived .from the street on which his land is situated, by reason of its relation to the street, which differs in kind and degree from the interest of the municipal public, and the destruction or any impairment of these benefits for other than street purposes, which materially lessen its. value, is *taking private property*. This view seems clearly correct in principle, and we think it is supported by the great weight of authority *even in those states where, as in this State, the constitutional and Statute law do not provide for compensation for damage to property when taken for a public purpose. Wilkins v. Gaffney*, 54 S. C., 199; 32 S. E., 299; *Abendroth v.* [*Manhattan*] *R. Co.*, [122 N. Y., 1; 25 N. E., 496], 11 L. R. A., 634 [19 Am. St. Rep., 461]; *Story v. R. Co.*, 90 N. Y., 122 [43 Am. Rep., 146]; *White v.* [*Northwestern N. C., R. R.*, [113 N. C., 610] [18 S. E., 330], 22 L. R. A., 627 [37 Am. St. Rep., 639]; *R. R. Co. v. Steinger* [*Steiner*] 44 Ga., 546; Elliott on Roads and Streets, 528; 1 Lewis on Eminent Domain, 240."

In the *Wilson case,* the Court said: "Indeed damage alone may constitute a taking."

Even under the appellants' view of this phase of the matter, the Court could not hold, as a matter of law, that the raising of the highway in the case at bar constituted a mere inconvenience for which the respondent would have no redress. Numerous witnesses testified as to substantial de- . preciation in the value of respondent's property caused by the raising of the highway, and that testimony was of such nature it could not be disregarded by the Court. When the question of injury to the respondent was submitted to the jury, under proper instructions as to the measure of damages (*Railroad v. Burton, supra*), that body found that the respondent had been damaged in the sum of $15,000, and there was ample testimony to support the finding.

In addition to this right of the respondent to redress, the railroad company, in the present case, as we have already pointed out, specifically assumed responsibility for any damages that might arise from the change of elevation of the highway.

The appellants further contend that, where a person conveys to a railway company a right of way over his land, the consideration paid for such conveyance presumptively embraces all reasonably necessary damages to his adjoining land, past, present, and future, which an assessment of damages in condemnation proceedings would include, and that any injury to the respondent's lands resulting from the raising of the highway in the present case could have been included in any damages that might have been assessed under condemnation proceedings, and that therefore the respondent cannot recover.

The condemnation Statute of this State (Section 4993, 3 Code 1922), provides that the compensation in condemnation proceedings shall be ascertained with respect "to the quantity and value of the land which may be required, and to the special damage which the owner may sustain by reason of the construction of the highway through his lands."

In *Lockhart Power Co. v. Askew*, 110 S. C., 449; 96 S. E., 685, which was a condemnation proceeding, the Court said:

"The general rule is that, where condemnation is provided, that remedy is exclusive, and that there can be but one assessment of compensation in such proceedings, which is conclusively presumed to include all damages to the owner of the land—past, present and future—by reason of the taking.    *    *    *

"If this element of damage is reasonably certain to arise from the ponding of water on respondent's land, there is no sound reason why it should not be included now in his compensation.    The fact that it is not absolutely certain to arise

does not exclude it from consideration. It should not be included, if it is a mere possibility (*Railroad Co. v. Sineath,* 8 Rich. [Law] 185, 193), for that would be going into the realm of speculation and conjecture. But, if it can be proved that such an element of damage is reasonably certain to follow, then it ought to be included in the compensation, for otherwise respondent would be remediless if it should occur. * * * All damages—past, present and future— which naturally or necessarily and proximately arise from the taking, whether they were in contemplation of the parties at the time or not, except those resulting from negligence in the use of property taken, are conclusively presumed to have been included in the compensation awarded in condemnation."

These statements, occurring in the same opinion, show the nature of the injuries which are presumed to be included in a condemnation proceeding, and for which such proceeding constitutes the exclusive remedy.

It has been held in this State, for instance, that damages may be recovered in condemnation proceedings for the rattle of the train, the blowing of the whistle, the smoke of the engine, the deterioration of parcels of land, the alterations of arrangement required about the homestead, the loss of time and expenditures caused by any increase of distance which has been occasioned, the injury to the value which the place had as a stand for a public house, etc. All these are injuries which might "naturally or necessarily and proximately arise form the taking" of the land, and result from the construction and operation of the railroad upon the right of way conveyed for that purpose.

The appellants cite the case of *Johnson v. Southern Railway,* 71 S. C., 241; 50 S. E., 775; 110 Am. St. Rep., 572, as follows:

"We think the nonsuit was properly granted. The condemnation statutes allow an assessment not only for the

quantity and value of the land which may be required by
the railroad company, but for any special damage which the
owner may sustain by reason of its construction.   Section
2190, 1 Code 1902.   This would certainly include the dam-
ages resulting from the construction of the embankment in
a proper manner."

In that case, however, the embankment was built upon
the right of way itself, and not , as in the present case, upon
other lands, and that case supports our position.

We do not apprehend that injuries resulting from a
raising of the highway on lands not conveyed to the railroad
company, but entirely independent of such lands, in order
to create an approach to an overhead bridge across the right
of way conveyed, is an element of damages so closely con-
nected with the construction or operation of a railroad
upon the premises conveyed as to bring them within the rea-
sonably necessary consequential damages flowing from the
construction and operation of the railroad, so as to raise
the presumption that they are included in a deed given in
lieu of condemnation proceedings.

We do not mean to say that injuries resulting from such
raising of the grade of the highway could not, in a case
like this, be assessed in a condemnation proceeding, but it
would have to be shown in the proceeding itself that such
injuries were reasonably necessary or arose proximately
from the change of grade, or were in contemplation of the
parties.   This is not equivalent to saying, however, that a
deed to a railway company, executed in lieu of condemna-
tion proceeding, is conclusively presumed to include such
injuries in its consideration—whether such injuries are so
included must be shown otherwise than by presumption.

The appellants attempt to show, in the present case,
that the parties contemplated the raising of the
highway when the deed was executed and, *inter
alia,* as evidence of that fact a plat dated February 4, 1924,

referred to in the option of the respondent, was placed in evidence for the purpose of showing that the raising of the grade was contemplated in the execution of the deed. Upon examination, however, this plat shows upon its face that it bears several revisions made subsequently to the date of the option and deed, and this Court cannot determine, even if the plat introduced shows the proposed raising of the grade of the highway, whether the plat without the later revisions showed such change of grade. The respondent himself denied that he knew the raising of the grade of the highway was contemplated by the railroad. Mr. Horne, an agent of the appellants, in a conversation with the respondent subsequent to the date of execution of the deed, stated to the respondent that the railway company was not interested in the fill. The conflicting testimony on this point made an issue of fact which was properly submitted to the jury. This issue the jury decided in favor of the respondent, and we cannot say that the testimony does not support their finding.

This brings us to a consideration of the point really raised by this exception, which is, Did the release in respondent's deed to appellants include any injuries that might be done to respondent's property by raising the grade of the highway? The appellants' position may perhaps be best stated by the following quotation which they make from 33 Cyc., 182:

"A stipulation in a grant to a railroad company releasing it from damages caused or to be caused by the location, construction, maintenance, and operation of the road, releases the company from liability for such damages as are a necessary result of the location, construction, maintenance, and operation of the road in a legal and proper manner."

The release specifically states that the consideration includes, "not only the value of the said land hereby conveyed, but also all and any incidental or consequential dam-

ages accruing to other and adjacent lands of the grantors
from or on account of the construction and maintenance
of said railroad upon the land hereinbefore described and
hereby conveyed."

We have carefully examined this language, and endeav-
ored to construe it in connection with the injuries to re-
spondent's property set up in the complaint, and we do not
think that the injuries to plaintiff's property are "a neces-
sary result of the location, costruction, maintenance, and
operation of the road in a legal and proper manner." The
release specifically covered "incidental or consequential
damages accruing  *  *  *  on account of the construc-
tion and maintenance of said railroad upon the land  *  *
*  conveyed." Neither under the specific terms of the re-
lease nor under the principle of construction advanced by
appellants can it be considered that injuries accruing to re-
spondent's property on account of the raising of the high-
way (over which the respondent had no control), for the
purpose of providing an approach to a bridge over the
right of way conveyed by respondent, are covered by the
release included in the deed. The construction and opera-
tion of the railroad would not necessarily require a raising
of the grade of the highway.

It is urged, however, that the respondent knew at the
time he executed the release that the highway would be
raised by the appellants, and that for this reason he is pre-
cluded from recovering damages in this suit. As already
pointed out, testimony tending to show that the respondent
had such knowledge, and equally positive testimony to the
contrary, was offered and admitted at the trial. This made
an issue of fact for the jury, which was submitted to them
by the Court under proper instructions, and decided by them
in favor of the respondent.

It is thus seen that, whether the matter be viewed from
the standpoint of a presumptive release through the convey-
ance of the right of way, or of an actual release in terms, or

in the light of circumstances attendant upon the execution of the release, that is, knowledge of the respondent at the time of the execution of the deed that the highway would be raised, the respondent is not barred from prosecuting this action or from recovering damages for any injury he may have suffered from the raising of the highway.

Seventh exception:

14    "The presiding Judge erred in not charging the jury as follows: 'If from the evidence you conclude that Mr. White had notice before the execution of this deed that the highway was to be raised, and therefore, if the raising of the highway was contemplated, under the evidence then it is for you to say whether or not this release would be binding on Mr. White'; the error being that this was a sound proposition of law, and the Court should have submitted the effect of the release as pleaded to the jury under the evidence in the case."

There was no error in the refusal of the trial Judge to charge as requested; the instructions that he gave to the jury on this point in his general charge adequately covered the appellants' request.

Eighth exception:

"The presiding Judge erred in charging the jury, 'The release in the deed of respondent does not constitute a bar for the raising of the street or road through the adjacent property'; the error being that the Court should have charged that this release does constitute a bar, if they found from the evidence that the raising of the highway was in the contemplation of the parties when the deed was executed."

This exception has been disposed of by what we have already said in discussing the sixth exception.

Ninth exception:

"Because the presiding Judge erred in not granting a new trial in that he failed and refused to submit the release, as

contained in the deed, and the option to the jury, and in charging that the same did not cover damages for the raising of the highway; the error being that he should have submitted these to the jury, and charged them that if, at the time of the execution of the deed, the raising of the highway was in the contemplation of the parties, then the plaintiff could not recover."

What we have said with reference to the sixth exception applies here. Even if the option should be considered together with the deed, the language of the option and the language of the deed relating to release have practically the same meaning.

We shall consider Exceptions 10, 11, 12, and 13, as 15, 16 they raise the same question. By these exceptions the appellants impute error to the trial Judge in allowing counsel for respondent, in the closing argument to the jury, to make statements with reference to testimony that had been excluded by the Court, and in refusing to restrain plaintiff's counsel in the same argument from making statements to the jury unsupported by testimony, and in refusing to grant a new trial on these grounds.

It appears from the record that, during the argument of Mr. Nicholls, of counsel for respondent, he made certain remarks to the jury which Mr. DePass, of counsel for appellants, regarded as being unsupported by the record, and prejudicial to the appellants, and thereupon a colloquy ensued between them. The remarks of neither, however, were directed to the Court. The trial Judge, addressing both counsel, ended the colloquy by saying:

"I am not ging to have any personalities in this case. Proceed with the argument."

Counsel for appellants contends that he was thus prevented from protecting the rights of his clients, which were prejudiced by the remarks of Mr. Nicholls. Later a motion for a new trial, supported by affidavits of several persons, was

made before the presiding Judge on the grounds, among others, stated in these four exceptions. In his order refusing the motion the Court said:

"I did not at any time cut counsel off from objecting to the argument of Mr. Nicholls, and, if counsel had objected to anything which was said by Mr. Nicholls in his argument which was outside of the record, I would certainly have expunged it from the record. No objection was made to any part of the argument, and I was not called upon to rule upon any part of the argument. I did not pay very close attention to the argument of Mr. Nicholls, and cannot be positive as to what was said. I do know that no objection was made by defendants' counsel, nor was my attention called to anything that Mr. Nicholls said that was out of the record, during or after the argument. If counsel had objected or called my attention to any part of Mr. Nicholls' argument, and if it had not been a proper argument, I would certainly have expunged it from the record."

The trial Judge further stated in his order that both Mr. DePass and Mr. Nicholls were much excited in their colloquy, and were not in a position to remember what occurred as well as the Court; that his remarks were addressed to both counsel and were intended to stop personalities; that "no objection was made to the Court, nor was the Court ever asked to stop counsel from going out of record."

While improper argument by counsel to the jury will not be condoned or allowed, it is proper and necessary that the Court's attention be called to such argument by timely objection on the part of opposing counsel, and failure to make such objection "is a waiver of the right to object afterwards." *Bunch v. Charleston & W. C. Railway Co.*, 91 S. C., 139; 74 S. E., 363. *Spigener v. Seaboard Air Line Railway Co.*, 111 S. C., 405; 98 S. E., 330. Under the statement of the whole matter, made by the trial Judge in

his order, there was no error in refusing a new trial on these grounds.

We have carefully examined the record, and find no error committed in the trial of the case that was prejudicial to appellants. The trial Judge correctly charged the law with respect to the issues made by the pleadings and the evidence; issues of fact were properly submitted to the jury, who resolved all questions in favor of the respondent, and their verdict should be allowed to stand.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : I think that the defendants' motion for a directed verdict should have been granted, and, therefore, respectfully dissent from the conclusion to the contrary, announced in the opinion of Mr. Justice Stabler, for the reasons which follow:

The action is for the recovery of damages on account of an alleged injury sustained by the plaintiff, the owner of certain lands abutting upon a public highway, in consequence of the raising of the grade of the highway by the railroad company, in the construction of its railroad. The railroad, as constructed in part upon lands conveyed to the company by the plaintiff, passes through a cut across the highway and under a bridge spanning the cut and connecting the broken ends of the highway. The raising of the grade of the highway was caused by the construction of approaches to the overhead bridge.

The plaintiff makes no complaint of the actual construction of the railroad over the land conveyed by him, but insists that his land outside of that conveyed, of which the latter was a part, which abutted upon the highway, has been damaged by the raising of the grade of the highway, rendering the lots inaccessible and unsalable.

The main defense of the railroad company is that in the deed which the plaintiff executed, conveying the lands to it, the plaintiff renounced all damages, *incidental or consequential,* which might accrue *to his adjacent lands* by reason of the construction of the railroad upon the lands conveyed.

The case was tried before his Honor, Judge Featherstone, and a jury; the trial resulting in a verdict in favor of the plaintiff for $15,000.00. The defendants have appealed from the judgment entered upon that verdict.

The undisputed facts of the case are these:

For quite a number of years before the commencement of the action involved in this appeal there had been numerous efforts on the part of the people of the City of Spartanburg to bring about the elimination of what was known as "East Main Street Crossing" of the Southern Railway Company in the City of Spartanburg.

In the early part of the years 1924 appellants offered to abandon this crossing by building a belt line around the city, and to build certain car repair shops at Hayne Junction, if the City of Spartanburg would contribute $250,000.00 to the railway company, to be used in the construction of the belt line, which the city agreed to do.

The plaintiff owned a tract of about 160 acres, lying on both sides of State Highway No. 8, known also as East Main Street extension, just outside of the City of Spartanburg, valuable, as claimed by him, for residential and business locations. It was deemed advisable by the railway company, in constructing the belt line referred to, to locate it in part upon the plaintiff's land. They accordingly obtained from the plaintiff and his brother an option, dated March 19, 1924, to purchase, at the price of $11,000.00, two separate parcels of his land; parcel No. 1, on the west side of the highway, and on both sides of the proposed belt line, containing 0.37 acre, and parcel No. 2, on the east side of the highway, and on both sides of the proposed belt line, containing 1.36 acres.

The option contained this statement:

"Said consideration is to be in full settlement of all damages to our property, as well as for the purchase price thereof."

The option in due time was accepted by the railway company, and, on May 31, 1924, the plaintiff, who had succeeded to the interest of his brother, executed and delivered to the railway company a fee-simple title deed to said parcels of land, which contained the following provision:

"It is understod by the grantors that the land hereinbefore described and hereby conveyed will be used by the grantee in the construction, maintenance, and operation of a railroad, and the grantors, for themselves, their heirs and personal representatives, further agree that the consideration hereinbefore recited and paid by the grantee includes, not only the value of the said land hereby conveyed, but also all and any incidental or consequential damages accruing to other adjacent lands of the grantors from or on account of construction and maintenance of said railroad upon the land hereinbefore described and hereby conveyed."

The railway company having determined to construct an underpass at the point where the belt line would cross the highway, finding it necessary, in doing so, to raise the grade of the highway in its approach to the overhead bridge, applied to the county authorities for permission to raise the grade. A hearing was had, and the application was refused (I assume upon the ground that the highway had become a part of the State system and under the jurisdiction of the State Highway Commission).

Thereafter the railway company made application to the State Highway Commission for permission to elevate the highway as indicated above. After a hearing the State Highway Commission passed the order set out in the record, granting the railway company permission to elevate and cross the highway upon certain terms and conditions, one of which was:

"That Southern Railway Company hereby assumes all responsibility for any damage that may arise from the change or elevation of the grade of said highway from Station 5 plus 00 'end of present paving' on west side of proposed crossing to Station 2 plus 38 'end of present paving' on east side of proposed crossing as shown by the profile plan filed with said petition, and hereby waives the right to require that the State of South Carolina, the State Highway Department, or the County of Spartanburg, or any of their agents or servants, be made parties to any action that may be brought as a result of any damage as aforesaid."

The railroad company then proceeded with the necessary grading to effect a connection of the old bed of the highway with the ends of the overhead bridge. The old bed of the highway was considerably above the level of the plaintiff's abutting lands. The witnesses differed as to how much; but the plaintiff in his testimony conceded that it was between 4 and 5 feet.

The evidence tended to show that the raising of the grade of the highway affected a frontage of 380 feet of the property on one side of the highway, and 390 feet on the other, and that the grade was raised on an average of 3½ feet.

Much testimony was taken *pro* and *con,* as to the diminution in the market value of the property by reason of the raising of the grade, the estimates ranging betwen $3,500.00 and $35,000.00.

I propose to confine my discussion to what I conceive to be the main question in the appeal, the determination of which should, in my opinion, dispose of the case: *Is the plaintiff estopped by his deed from claiming compensation in damages for the injury alleged to have been caused to his adjacent land by the raising of the grade of the highway upon which it abuts?*

I. For the moment I shall disregard that portion of the deed from the plaintiff to the railroad company, covering

the two parcels of land, which contains a renunciation of all incidental and consequential damages to his adjacent lands, by reason of the construction of the railroad. I shall consider the deed, then, as if that provision had been omitted, and that the deed had been simply a conveyance of the two parcels for railroad purposes.

II. Under these circumstances I think that it is thoroughly settled everywhere that, when one conveys to a railroad company a right of way over his land, for the construction, maintenace, and operation of a railroad, and receives a substantial consideration therefor, he is conclusively presumed to have accepted that consideration in full settlement of all damages *which he could have set up in a condemnation proceeding.*

In *Chicago, R. I. & P. Ry. Co. v. Smith,* 111 Ill., 363, it was held:

"Where a person conveys a right of way over his land, it will be conclusively presumed that all the damages to the balance of the land, past, present and future, were included in the consideration paid him for his conveyance, *the same as an assesment of damages on a condemnation* would be presumed to embrace."

In *Watts v. Norfolk & Western R. Co.,* 39 W. Va., 196; 19 S. E., 521; 23 L. R. A., 674; 45 Am. St. Rep., 894, it is said:

"The fact that the company claims not under condemnation, but under the purchase or grant, does not alter the case, and entitle Watts to recovery for injury from the wall, because a grant of right of way is a waiver of all such damages *as are assessable under an inquisition,* as, in such case, if the grantor did not intend to waive damages he should have provided against injury [citing cases]. Though, in such case, there be damage, it is *damnum absque injuria.*"

In *Kirk v. Kansas City S. & G. R. Co.,* 51 La. Ann., 667; 25 So., 457, the Court said:

"Claims which would have been within, and would have gone to make up, the original damages or compensation that would have been assessed against, and paid by, the railroad company, as the condition precedent to the condemnation of the right of way in an expropriation proceeding, must be held to have been considered and included by the parties, as being within the consideration agreed upon when they balanced advantages and disadvantages."

In *Illinois Cent. Railroad Co. v. Anderson,* 73 Ill. App., 621, it was held:

"Cases between a railroad company and a grantor or condemnee fall in the same class. In such cases the consideration for the grant or the damages assessed on condemnation include, once for all, the full compensation to be paid for any lawful use that fairly falls within the terms of the grant or the specifications of the condemnation."

In *St. Louis R. Co. v. Van Hoorebeke,* 191 Ill., 633; 61 N. E., 326, the Court said: ·

"Where a railroad company obtains a right of way by purchase from the landowner, having power under the Constitution and law to do so, all the incidents attach to such right as are acquired by eminent domain when the right of way is obtained by condemnation. * * * In other words, a railroad company acquires the same rights and privileges under a private grant as to the construction and operation of its road, *as under a right of way acquired by condemnation,* where it has the power, under the law, to receive by grant and to acquire by condemnation."

"A conveyance of land to a railroad company for an agreed consideration presumptively embraces in such consideration all reasonably necesary damages to adjoining land, which have already been caused, or which may be caused by the construction and maintenance of the road [I interpolate, in a reasonably proper manner], and *which might have been recovered in condemnation proceedings;* and

therefore in the absence of any showing to the contrary, such conveyance relieves the company from all liability for such damages, and from other damages which the terms of the instrument or the attendant circumstances expressly or impliedly show to have been included in the compensation paid." 33 Cyc., 161.

"The conveyance of land to a railroad for a right of way, or the execution of a release of damages for its construction, usually has the same effect as *the asessment and payment of damages under* proceedings for condemnation, and the land owner can claim no further damages for the legal and proper construction of the railroad." 2 Elliott R. R. (3d Ed.), § 1157.

In 22 R. C. L., 892, after stating the rule in the exact terms of the quotation from 19 Ann. Cas., 335, set out below, the author states:

"The sale of a right of way to a railroad company operates as a remission by the landowner of all damages to which he would have been entitled in a proceeding to condemn the right of way. * * *"

In *Hord v. Holston River R. Co.,* 122 Tenn., 399; 123 S. W., 637; 135 Am. St. Rep., 878; 19 Ann. Cas. 331, the Court said:

"An agreement between a landowner and a railroad company to sell the latter a right of way across the tract of the former covers all damages, of whatever sort, to that tract, to which the landowner would have been entitled in a regular condemnation proceeding. He is presumed to have contemplated and arranged for all such damages in fixing the consideration for the contract, and he is therefore remitted to it."

III. I do not apprehend that there could arise a question as to the right of the plaintiff upon condemnation proceedings, to have insisted upon the injury to his adjacent lots by the raising of the grade of the highway, as an element in the measure of his compensation.

If the parties had not agreed upon a price to be paid to the plaintiff for the two parcels of land, to be used for the construction, maintenance, and operation of the railroad, and it had been necessary for the company to acquire them by condemnation, can there be any doubt that the plaintiff, as he had the right to do, would have claimed, as an element of the compensation to be awarded him, the damage to the adjacent land by the raising of the grade of the highway? The evidence that the plans for the construction of the railroad contemplated the raising of the grade was readily accessible, for the option given by the plaintiff referred him to the plat which had been filed with the Chamber of Commerce, and it showed the elevation of the bridge and the inevitable raising of the grade of the highway.

In *Johnson v. Southern R. Co.*, 71 S. C., 241; 50 S. E., 775; 110 Am. St. Rep., 572, the Court said:

"The condemnation statutes allow an assessment not only for the quantity and value of the land which may be required by the railroad company, but for any special damage which the owner may sustain by reason of its construction. * * * This would certainly include the damages resulting from the construction of the embankment *in a proper manner.*"

In *Watts v. Norfolk & Western R. Co.*, 39 W. Va., 196; 19 S. E., 521; 23 L. R. A., 674; 45 Am. St. Rep., 894, the Court said.

"If, instead of acquiring the right-of-way land by purchase, the company had caused it to be condemned for its use, the compensation to Fry would include, not simply pay for the land actually taken, but damages to the residue of the tract. * * * *Shenandoah, etc., R. R. Co. v. Shepherd*, 26 W. Va., 672; 2 Wood's Railway Law, Secs. 258, 259. The sum is to cover past, present, and prospective damages to such residue that are the natural, necessary, or reasonable incident to the work."

"Where land is acquired for a railroad right-of-way, it will be presumed that the damages incident to the use of

farm crossings for cattle, etc., were considered in fixing the compensation paid for the right-of-way, whether it was acquired by agreement or compulsory proceedings." *Libby v. Canadian Pac. R. Co.,* 82 Vt., 316; 73 A., 593.

In *St. Louis R. Co. v. Van Hoorebeke,* 191 Ill., 363; 61 N. E., 326, the Court said:

"Had the right-of-way been lawfully acquired by condemnation, appellees (landowners) would have received compensation for the value of the strip of land, and also an assessment of all damages to the residue of their tract to result from the construction and operation of the road. 'The rule is that the appraisement of damages in a case of condemnation embraces all past, present, and future damages which the improvement may thereafter reasonably produce.' "

In 10 R. C. L., 153, it is stated:

"When part of a parcel of land is taken by eminent domain, the owner is not restricted to compensation for the land actually taken; he is also entitled to recover for the damage to his remaining land. In other words he is entitled to full compensation for the taking of his land and all its consequences; and the right to recover for the damage to his remaining land is not based upon the theory that the damage to such land constitutes a taking of it, nor is there any requirement that the damage be special and peculiar or such as would be actionable at common law; it is enough that it is a consequence of the taking. The entire parcel is considered as a whole, and the inquiry is, How much has the particular public improvement decreased the fair market value of the property, taking into consideration the use for which the land was taken and all reasonably probable effects of its devotion to that use?"

See, also, *U. S. v. Welch,* 217 U. S., 333; 30 S. Ct., 527; 54 L. Ed., 787; 28 L. R. A. (N. S.), 385; 19 Ann. Cas., 680. *Sharp v .U. S.,* 191; U. S., 341; 24 S. Ct., 114; 48 L. Ed., 211. *St. L., I. M. & S. R. Co. v. Maxfield Co.,* 94

Ark., 135; 126 S. W., 83; 26 L. R. A. (N. S.),1111. *Wabash, St. Louis & P. R. Co. v. McDougall,* 126 Ill., 111; 18 N. E., 291; 1 L. R. A., 207; 9 Am. St. Rep., 539. *Lake Erie & W. R. Co. v. Scott,* 132 Ill., 429; 24 N. E., 78; 8 L. R. A., 330. *I. B. & W. R. Co. v Allen,* 113 Ind., 308; 15 N. E., 451; 3 Am. St. Rep., 650. *Gautier v. Hudson,* 55 N. J. Law, 88; 25 A., 322; 17 L. R. A., 785. *Beck v. R. Co.,* 148 Pa., 271; 23 A., 900; 33 Am. St. Rep., 822. *Hinckley v. Seattle,* 74 Wash., 101; 132 P., 855; 46 L. R. A. (N. S.), 727; Ann. Cas. 1915-A, 580.

If, therefore, the plaintiff is presumed by his deed to have conveyed all right to damages which would have been open to him in case of condemnation, and his right to set up damages on account of injury to his adjacent land was open to him in a condemnation proceeding, it follows that he is presumed by his deed to have conveyed his right to such damages.

IV. The discussion up to this point, as I have stated, has proceeded upon the theory that what I consider the express renunciation of the plaintiff, in the deed, to any and all damages, incidental or consequential, to his adjacent land, resulting from the construction of the railroad upon the parcels conveyed, was negligible. If I am correct in my conclusions above outlined, it is negligible, except as reinforcing that conclusion.

I come now to a discussion of it, and, for the sake of convenient reference, reproduce that provision:

"The grantors * * * further agree that the consideration hereinbefore recited and paid by the grantee *includes,* not only the value of the said land hereby conveyed, but also *all and any incidental or consequential damages accruing to other adjacent lands of the grantors, from, or on account of construction and maintenance of said railroad upon the land hereinbefore described and hereby conveyed."*

The pertinent inquiry arises whether the raising of the grade of the highway was so connected with the construc-

tion of the railroad that the injury sustained by the plaintiff on account thereof can be considered incidental to, or consequential from, such construction. If so, there can be no doubt that the plaintiff is now estopped from insisting upon the recovery of damages on that account.

It certainly was a part of *the plan* of the company in constructing the belt line. That alone, however, is not conclusive; it cannot be considered as so connected with the construction of the railroad that a resulting injury to an abutting owner would generate damages incidental or consequential, unless the entire plan of which it was a material element was a reasonably proper exercise of the right to construct the railroad at that point. I maintain that it was; let us see.

There was, and had been for years, a grade crossing of East Main street in the city of Spartanburg, by the railroad company. The long standing agitation for a belt line around a part of the city, on the north, was due to the dangers and inconveniences attending that situation—a crossing at grade of a principal street in the city. The belt line, as proposed and agreed upon, could not possibly reach the Air Line Railway and the Union Station at Magnolia street, without crossing, at a more northerly point, the same street from which it was proposed to eliminate the old grade crossing. (It was not, strictly speaking, the *same street,* for the proposed crossing was outside of the city; but it was an extension of East Main Street, *so called,* and became, outside of the city, highway No. 8, under the Jurisdiction of the State Highway Commission.) While the dangers and inconveniences incident to a grade crossing at the latter point may not be as pronounced as at the former location, the policy of the State Highway Commission and of the General Assembly (Acts of 1924, Act No. 634), is strongly tending toward the elimination of grade crossings everywhere practicable.

I think, therefore, that the railroad company's conformity with this well-known policy and earnest hope furnishes

strong evidence of the reasonableness of the plan in an age of automobiles and joy riders. Then there is evidence tending to show that the plan conformed to the company's plans at other points along the line; concededly for the benefit of the company. It is immaterial whether the plan was altruistic or economical. Neither motive can justly be said to have been unreasonable, in the total absence of evidence tending to show that it was so.

Having determined, then, to perfect the plan, either for the purpose of eliminating the grade crossing or to conform the grade to the grade of some other points on the belt line, two operations were necessary: To dig a cut and raise the grade of the highway, if the worthy purpose of eliminating the grade crossing was to be adhered to. Of course, it was *possible* to dig the cut so deep that the overhead bridge would be upon the grade of the old road, or vice versa, to cross the old road at grade and elevate the overhead bridge high enough for clearance. The one alternative would disarrange the company's entire plan, and the other would put the plaintiff's property at the foot of a mountain. The company adopted the middle course of making both the cut and the grade of the highway contribute to the desired end— all with the approval and formal permission of the only body in the State having jurisdiction of the matter.

While this Court may not say that the plan adopted by the company was reasonable, it can say that, in order for the plaintiff to show that the damage sustained by him was not incidental or consequential as relates to the construction of the railroad, the burden was upon him to show the unreasonableness of it. Of that I do not find a particle of evidence. It seems to me clear, therefore, that the plaintiff is impaled upon the horns of his own deed.

V. I have endeavored to show that the plaintiff has no higher or better rights under a grant of a right of way than he would have had under condemnation proceedings; that his deed and the acceptance of the consideration satisfied

all claims that he could have preferred in condemnation proceedings; that he could have recovered in such proceedings compensation for injury to his adjacent land by the raising of the grade of the highway; that his deed therefore has cancelled all such claims; that he has expressly agreed by his deed to renounce all claims for damage to his adjacent land incidental to, or consequential from, the construction of the railroad; that the damage to his land by raising the grade of the highway was incidental to, and consequential from, the construction of the road; and that he is thereby estopped from setting up now such claim for damages.

There remains, therefore, but one possible cause of action open to him, and that is one based upon the negligence of the railroad company in the *plan* of construction or *construction* of the railroad, at the point in question. That is to say, where a railroad company has acquired, either by grant or by condemnation, a right of way for the construction of a railroad over the lands of another, all injury to the landowner *by the proper construction of the railroad* is presumed to have been compensated for in the consideration for the grant or in the compensation allowed in condemnation proceedings. The *proper* construction of a railroad necessarily results in injury, direct, incidental, and consequential, to the landowner—all of which is presumed to have been taken into consideration in the consideration paid or in the compensation allowed. Hence, under these circumstances, the landowner can recover additional compensation only upon the theory that the construction has been improperly, negligently, performed by the company.

"The company has the right to construct its road in a suitable and proper manner, whatever may be the injury to the residue of the lands of the same owner; and the latter can maintain no action against the company for any loss or injury which results from building its road in a suitable and proper manner." Judge Freeman, note to 45 Am. St., Rep.,

910, citing *Johnson v. R. Co.*, 35 N. H., 569; 69 Am. Dec., 560.

In a note to 19 Ann. Cas., 335, it is declared:

"It is a well-settled rule that the acquisition by a railroad company, either by deed or condemnation proceedings, of a right of way through a tract of land, carries with it a license to do all that is necessary for the *proper* construction of the railroad, and that the company is not liable for injuries to the land arising from such construction, where it exercises reasonable skill and careful judgment in designing and constructing the road. But the company remains liable, nevertheless, for any proximate injury that results to the grantor from the want of skill and care in whatever work it undertakes in order to effect the construction"—citing cases from U. S., Arkansas, Dakota, Georgia, Illinois, Indiana, Iowa, Kentucky, Louisiana, Missouri, Nebraska, New Hampshire, North Carolina, Pennsylvania, Rhode Island, South Carolina, Texas, Vermont, West Virginia and Canada.

"It will be presumed, however, that a deed to the right of way, or a release of damages, was executed in contemplation of the lawful and proper construction of the road, and the landowner will be permitted to recover for damages occasioned by negligence and lack of skill, such as a failure to provide necessary culverts, the diversion of a stream of water, the negligent removal of earth by which the adjoining soil is deprived of support, or the construction of its embankment in such a way as to unnecessarily flood the grantor's land, or leave dirt and rock upon a part not granted." 2 Elliott R. R. (3d Ed.), § 1157.

"Such a conveyance, however, does not relieve the railroad company from liability for damages which are caused by its negligence in designing, constructing, and maintaining the road, nor for damages resulting from improper encroachments upon land outside the right of way, nor does it relieve the company from such damages as from the terms of the instrument are not to be presumed to have been in

contemplation of the parties at the time of the sale or which were expressly reserved." 33 Cyc., 162.

In *Watts v. Norfolk & Western R. Co.*, 39 W. Va., 196; 19 S. E., 521; 23 L. R. A., 674; 45 Am. St. Rep., 894, the Court said:

"Thus the company had the older and better right to the land conveyed to it for right of way, with all rights and privileges going with such right under the law. It had the right, as owner thereof, to use it as it pleased for the purpose of the construction of its road, provided it used the same in a prudent, reasonable way, considering the nature of its use, and not in an improper, negligent way, inflicting unnecessary injury on others. It had the right, as against Fry [the landowner], to build a wall, to stay and support its roadway, and protect it against the inroads of the stream. Suppose this wall, if built in a proper manner, did entail permanent injury upon Fry by the diversion of the stream's current against his mills, lessening their capacity, or injuring the banks, he can recover no damage on that score."

"If this wall had been built in a negligent and improper way, imposing injury upon the residue of the land, which, in the exercise of due and proper care, could have been avoided, it would be different; for neither a right of way conferred by grant, nor one conferred by condemnation, will give exemption from damages consequential upon the improper or negligent exercise of the right and not from the fair, proper, and reasonable exercise of it, for the reason that neither in making such grant nor in the assessment upon an inquisition are damages contemplated or included that are to be solely attributed to such misuse of the right. * * * There is no evidence that such wall was not in itself a prudent construction in building the railroad, or that it was not properly constructed, or that any injury it worked was avoidable. No damage could be recovered on account of it." *Watts v. Norfolk & Western R. Co.*, 39 W. Va., 196; 19 S. E., 521; 23 L. R. A., 674; 45 Am. St. Rep., 894.

The case of *Wallace v. Columbia & G. R. Co.,* 34 S. C., 62; 12 S. E., 815, is quite instructive. In that case the plaintiff, who had granted to the railroad company a right of way over a large body of land through which a certain stream flowed, brought an action for damages and injunction against the railroad company, alleging that, in the construction of the railroad through plaintiff's land, the company had erected a dam or obstruction (I assume a "fill") across said stream and maintained it at a great height, obstructing the natural flow, and raising the water eight feet above its ordinary level, in consequence of which the water was backed up on plaintiff's lands and flooded the same, to his damage. The appeal was from an order overruling a demurrer to the complaint upon the general ground.

The Court, in an opinion by Mr. Justice McIver (later Chief Justice), reversing the order appealed from, said:

"Now, stripping these allegations of all unnecessary phraseology can they amount to anything more than an allegation *that the defendant has done an act which, by its charter and right of way granted to it by the plaintiff, it had the legal right to do?* For the mere fact that injury has resulted to plaintiff from such act does not necessarily affect the legality of the act. We suppose that whenever a railroad company acquires the right of way over the lands of another, *either by legal proceedings for condemnation or by agreement with the landowner,* some injury results to the owner of the soil over which the road is constructed, but this cannot be regarded as affecting necessarily the legality of the act of the railroad company in constructing its road. The mere fact that the defendant company has, under its charter, after having obtained from the plaintiff the right of way over his lands, constructed and maintained its road-bed over said lands, does not necessarily give the plaintiff any cause of action against the company, even though the construction of the road may have resulted in injury to the

plaintiff. *To invest the act of the defendant with such a character of illegality as would give the plaintiff a cause of action, some other fact must be alleged. There must be some allegations of facts showing that the defendant in doing the act which it was authorized to do, has either wantonly or through negligence done the act in such a manner as unnecessarily impaired or injured the rights of the plaintiff.* It may be that, by the exercise of proper care and skill, the crossing of the streams in question might have been so arranged as to cause but little, if any, obstruction to the natural flow of the water; and that such care and skill was not exercised by the company in constructing the work complained of. But if so, these facts should have been alleged in the complaint, *for they would really constitute the plaintiff's cause of action.* The wrong, if any, which was done to the plaintiff by the defendant did not consist in constructing its roadbed over the streams flowing through the lands of the plaintiff, for that it had a legal right to do. Nor did it consist necessarily in the fact that the natural flow of the water was obstructed, for that may have been the inevitable and unavoidable consequence of the construction of the railroad; but it may have consisted in the unskillful and negligent manner in which the work was done. Now, in the complaint there is no allegation of any fact tending to show that the road could have been so constructed as to avoid the result complained of by the exercise of proper care and skill on the part of the defendant company, and no allegation tending to show the want of such care and skill."

The attorneys for the plaintiff evidently recognized the correctness of that principle, for in the complaint it is alleged that the acts of the defendant in excavating the cut and raising the grade of the highway were done "willfully, wantonly, with no regard for the necessity *of* (evidently a misprint for "or") the rights of the plaintiff."

In *Charleston, C. & C. R. Co. v. Leech,* 33 S. C., 175; 11 S. E., 631; 26 Am. St. Rep., 667, the Court said:

"That, where a·thing is granted, the grant implies a right to all the means of enjoying it, so far as the grantor was possessed of those means,"

—and quotes from *Sheets v. Seldon,* 2 Wall., 177; 17 L. Ed., 822:

."The true rule on the subject is this, that everything essential to the beneficial use and enjoyment of the property designated is, in the absence of language indicating a different intention on the part of the grantor, to· be considered as passing by the conveyance."

In *Leitzsey v. Power Co.,* 47 S. C., 464; 25 S. E., 744; 34 L. R. A., 215, the Court, after approving the doctrine of the *Wallace case,* cites with approval the case of *Watts v. R. Co.,* 39 W. Va., 201; 19 S. E., 523; 23 L. R. A., 674; 45 Am. St. Rep., 894, and quotes from it as follows:

"Neither a right of way conferred by grant nor one conferred by condemnation will give exemption from damages consequential upon the improper or negligent exercise of the rights, and not from the fair, proper, and reasonable exercise of it, for the reason that neither in making such grant nor in the assessment upon an inquisition are damages contemplated or included that are to be solely attributed to such misuse of the right."

In *Jones v. Seaboard Air Line R. Co.,* 67 S. C., 181; 45 S. E., 188, it is said:

"The plaintiffs, in giving a deed for a right of way over their lands, must be held to have had in view all damage coming to their property from a reasonably skillful and proper construction of the bridge"—citing the *Wallace, Leitszey* and *Nunnamaker Cases.*

In *Granger v. Tel. Co.,* 70 S. C., 528; 50 S. E., 193; 106 Am. St. Rep., 750, it is said:

"Mary Granger, as tenant in common, had the right to grant permission to defendant company to construct and maintain its telegraph lines through the property, and especially as this was done with the knowledge and consent of plaintiff, there is no foundation for an action of trespass by reason of such construction, unless defendant had committed a trespass by doing something not properly incident to the exercise of the right granted, or in injuriously exercising the right in a negligent or wanton manner."

In *Lampley v. Atlantic Coast Line R. C.,* 71 S. C., 156; 50 S. E., 773, the Court said:

"When the defendant acquired its right of way through said lands, it also acquired the right to obstruct water courses, and was only liable for the obstruction, when the plaintiff alleged and proved negligence in the construction of its road or other works."

In *Johnson v. Southern R. Co.,* 71 S. C., 241; 50 S. E., 775; 110 Am. St. Rep., 572, the Court said:

"Where a railroad company, under the statute, has a right to construct its railroad, and has entered with the express or implied permission of the owner, it is not liable as a trespasser to adjacent landowners, under the common law, for the act and result of construction with due care, since the law will not declare that to be a nuisance or trespass which it has authorized. But as the law does not authorize negligence and the condemnation statutes provide no damages for negligence, there is a remedy at common law for damages resulting from a construction done in a negligent manner."

In *Touchberry v. Northwestern R. Co.,* 83 S. C., 315; 65 S. E., 341, the Court said:

"There is no difference between the counsel as to the principle of law involved. A right of way acquired by a railroad company either by grant or condemnation for the construction and maintenance of its road carries with it exemption of liability for damages to the grantee (grantor?)

or landowner arising from the use of the land for a right of way, not due to negligence. *Wallace v. Columbia, etc., R. R. Co.,* 34 S. C., 62; 12 S. E., 815. *Nunnamaker v. Water Power Co.,* 47 S. C., 487; 25 S. E., 751 [34 L. R. A., 222; 58 Am. St. Rep., 905]. *Jones v. Ry. Co.,* 67 S. C., 181; 45 S. E., 188.    *    *    *    The question then is, whether this complaint contains allegations which, if proved, would tend to show that the damage suffered by the plaintiff was due to the negligence of the defendant.    More specifically does the complaint contain allegations which if proved would tend to show that by reasonable care and skill the defendant could have fully utilized its right of way without obstructing the water course known as Batson's branch, and so avoided the injury to the plaintiff, due to the flooding of his land."

In *Thomas v. Power Co.,* 105 S. C., 268; 89 S. E., 552, the Court said:

"This does not conflict with the rule that, where a right is granted, it includes, by implication, all that is necessary to enjoy the right, for this the parties will be presumed to have had in contemplation, as, for instance, the grant of a right to construct a railroad through grantor's land (*Wallace v. Railroad Co.,* 34 S. C., 66; 12 S. E., 815), or the right to maintain a dam at a certain height (*Reid v.* [*Courtenay*] *Mfg. Co.,* 68 S. C., 466; 47 S. E., 718)."

In *Duncan v. Southern R. Co.,* 121 S. C., 196; 113 S. E., 357, the Court quotes with approval the following from *Henry v. Southern R. Co.,* 93 S. C., 130; 75 S. E., 1020:

"Where one has an easement, such as a right of way, he has the right to [do] all things necessary to the enjoyment thereof, provided there is no negligence,"—and from *Wallace v. Columbia & G. R. Co.,* 34 S. C., 66; 12 S. E., 815:

"There must be some allegation of facts showing that the defendant, in doing the act which it was authorized to do, had either wantonly or through negligence done the act in such

a manner as unnecessarily impaired or injured the rights of plaintiff."

In the *Duncan Case,* the syllabus is:

"In an action for damages to plaintnffs' land on account of the [alleged] negligent construction of a dam across a stream flowing across plaintiffs' land, evidence *as to the improper construction of the dam* held sufficient to go to the jury." —and in the opinion it is stated:

"The testimony to the effect that the dam was 'high enough before,' and that the water could have been diverted by lowering the pipe instead of raising the dam, in connection with the testimony as to the purpose to be subserved by the structure, the topography of the ground, and the consequential injury claimed, etc., furnished some foundation for a possible inference of negligent construction, upon the theory that the raising of the dam was not reasonably necessary to effectuate the legitimate purposes of the defendant."

It is contended that, by accepting the terms of the order of the state highway commission, authorizing the railroad company to cross and raise the grade of the highway, for the purposes of the underpass, the railroad company has obligated itself to pay the plaintiff for the damage to his abutting property consequent upon the raising of the grade. This does not by any means follow. The order declares:

"That Southern Railway Company hereby assumes all responsibility for any damage that may arise from the change or elevation of the grade of said highway from station," etc.

The right of the plaintiff to recover damages depends upon his showing dehors the order of the commission. If, as I have endeavored to show, he is not entitled to any damages by reason of his own covenant, surely the order of the commission cannot vest him with what he has renounced.

The charge of willfulness, which was the only one contained in the complaint, was specifically withdrawn at the

trial in the abandonment of the claim for punitive damages, and, even if the plaintiff could recover upon the ground of negligence in the construction of the railroad, I do not think that there is the slightest evidence in the case as to that.

For these reasons, I think that the motion of the defendants for a directed verdict should have been granted.